UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAVION FAIRLEY                                         CIVIL ACTION

VERSUS                                                 NO:     15-462

WAL-MART STORES, INC.                                  SECTION: "G" (4)

## ORDER

Before the Court is **Plaintiff's Motion to Compel (R. Doc. 53)** seeking an Order from the Court to compel Defendant to produce complete responses to her Requests for Production Nos. 8 and 18 and produce a corporate representative to speak on Defendant's financial structure and performance as it is probative of her claim for punitive damages. R. Doc. 53, p. 1. The motion is opposed. R. Doc. 56. The motion was submitted on June 1, 2016, and decided on the brief. R. Doc. 81.

**I.    Background**

Ravion Fairley[1] filed this lawsuit contending that Wal-Mart discriminated against her by overlooking her for promotions and not paying her the same pay as men. R. Doc. 1, p. 4. Fairley worked at various Wal-Mart stores for fourteen years and worked in different departments and different positions, including the meat and seafood departments. She worked as a customer service representative and was the department manager during her employment at the store located in Covington. She also worked as a customer service representative in the deli section during her employment at the Mandeville store.[2] *Id.* at 4. Fairley worked at the Mandeville Store until 2011. While at the Covington location, Fairley attests that she worked as a meat wrapper and later

---

[1] Fairley was previously a claimant in the *Dukes v. Wal-Mart* class action which was ultimately reversed and the class was decertified by the United States Supreme Court. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2001). The statute of limitation for filing her claim was extended to May 25, 2012. *See* R. Doc. 16-6, p. 2. The EEOC issued a right-to-sue letter on November 20, 2014. R. Doc. 1, p. 2.

[2] The parties have stipulated that Plaintiff is no longer seeking a claim for her time in the Mandeville location.

assumed duties as the manager of the seafood department, although her official position was a customer service associate. She contends that she expressed interest in a management position early on and each time was told that no position was available. She complains that she would only learn of positions after they were filled. Further, she states that she sought to enter Wal-Mart's manager training program but only male employees were selected for the program and management positions went to less experienced male employees. *Id.* at 5. She also complains that male employees were paid more than her, received higher raises, and better bonuses for the same or similar work. *Id.* at 6. Fairley therefore seeks damages for past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, attorney's fees and costs. R. Doc. 1.

As to the instant motion, Plaintiff seeks to compel Defendant to produce: (1) comparator data and personnel files for employees that worked in the seafood department during her time at the Covington store, (2) pay and personnel files for Covington employees in the meat department from 1997 to 2005, (3) produce a corporate representative to discuss the financial structure and performance of the district in which Plaintiff worked from 1997 to 2005 which she argues is probative of her claim for punitive damages.

In response, Wal-Mart contends that she is not entitled to the information that she seeks because: (1) she testified that she was not discriminated against while in the seafood department, (2) no comparative data exists to support her failure to promote claim during her time in the meat department as she was meat wrapper which is an inherently different job than a meat cutter and she never sought a promotion to a meat cutter, and (3) the request for financial statements should be denied because Wal-Mart is a public company and all of its financial statements are publicly accessible. However, if financial statements are deemed relevant, the information should be limited

to the period of December 1997 to November 1999 which represents the time that she worked in the meat department. R. Doc. 56, p. 1.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *See* Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

### III.   Analysis

Plaintiff argues that Defendant has not fully responded to her Request for Production Nos. 8 and 18. R. Doc. 53-1, p. 2. Request for Production No. 18 seeks the personnel files for all male comparators in the Covington meat department between 1997 and 2005. Request for Production No. 19 seeks pay data and personnel files for all hourly employees in the seafood department in the Covington store between 1997 and 2005.

Regarding the request for the pay data for employees within the seafood department, Plaintiff argues that the information is relevant to identify similarly-situated male employees who were paid more than her. *Id.* at 8. Further, Plaintiff argues that Defendant should be compelled to produce the personnel files for male employees in both the meat and seafood departments for the departments in which she worked during her employment. *Id.* at 11. She states that she only seeks relevant portions of the personnel files depicting the comparator's work history qualifications and performance. *Id.* at 12. Such information, she claims, is necessary to her effort to prove pretext and establish that similarly situated male employees were treated more favorably than her.

Additionally, Plaintiff argues that Defendant should be compelled to produce a corporate

4

representative to discuss the financial structure and performance of the district in which Plaintiff was employed between 1997 and 2005 *Id.* at 12. She argues that such information is probative of her claim for punitive damages.

In response, Defendant notes that Plaintiff worked in the meat department in the Covington store from December 1997 until November 1999 and later transferred to the seafood department where she worked until 2005. R. Doc. 56, p. 1. The Defendant argues that Plaintiff is not entitled to the personnel files of all male meat department employees between 1997 and 2005. It contends that Plaintiff's pay discrimination claim is limited to December 1997 to November 1999 when she worked as a meat wrapper. *Id.* at 2. It states personnel files of meat wrappers are not relevant to Plaintiff's claims because meat packer is an inherently different job than meat wrapper as it requires more skill and experience. *Id.* at 3. Nonetheless, it states that Plaintiff has been provided with the pay histories of meat cutters and has failed to establish how additional information is relevant to her claim. *Id.*

Further, it states that comparator data and personnel files of seafood department employees is irrelevant because Plaintiff has testified that she was not discriminated against during her time in the seafood department because she did not have any male comparators. Finally, Wal-Mart maintains that Plaintiff is not entitled to information regarding the financial structure of the district in which she worked from 1997 to 2005 because it is a publically traded company and its financial statements are easily assessable to the Plaintiff. *Id.* at 5. However, if its financial worth is deemed to be relevant, it argues that the information should be limited to December 1997 to November 1999. *Id.* at 5.

As a threshold matter, the scope of discovery is limited to non-privileged matters that are relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). Further, on motion or on its own,

the Court must limit discovery that is not relevant to a party's claim or defense. Fed.R.Civ.P. 26(b)(2)(C)(iii).

First, with respect to the Plaintiff's request for personnel files for male comparators in the Covington meat department from 1997 to 1999, Plaintiff worked as a meat wrapper in the Covington store from December 1997 to November 1999. Plaintiff testified that the hierarchy of the meat department consisted of three tiers – managers, meat cutters, and meat wrappers. R. Doc. 56-1, p. 6. Butch Herbert was the manager of the department and there were eight to ten meat cutters during her four years in the department. Plaintiff also testified that in addition to her, there was just one other meat wrapper, a female named Kelly, whose last name is unknown, during her time in the department. According to Plaintiff's testimony, meat cutters were essentially butchers whose job was to cut the meat. Plaintiff never applied to be a meat cutter because she was afraid of the saw. *Id.* at 12. Conversely, the job of a meat wrapper involved wrapping and pricing the meat after it was cut by a meat cutter.

For Title VII purposes, the "similarly situated employees" prong requires, a plaintiff must show that he was treated less favorably than others "under nearly identical circumstances." *Love v. Kan. City S. Ry.*, 574 F.3d 253, 259–60 (5th Cir.2009); *see also Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000) (declining to find "similarly situated employees" who had different job duties); *Perez v. Tex. Dept. of Crim. Justice*, 395 F.3d 206, 213 (5th Cir.2004) (holding that to satisfy the "similarly situated" requirement, the situations of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical.").

Here, by Plaintiff's own admission, meat cutters performed a completely different job than meat wrappers which requires less skill and experience. Doc. 56-1, p. 12. Further, Plaintiff testified that the only meat wrapper that she worked with was a female named Kelly, who is not a

comparator for Title VII purposes. Plaintiff also testified that she never sought a promotion to become a meat cutter. *Id.* Therefore, the personnel file of meat cutters are irrelevant to Plaintiff's claim because she was not a meat cutter and represented that she never sought a promotion when she was in the meat department. Accordingly, her motion is denied as to Request for Production No. 18.

Second, regarding Plaintiff's request for information pertaining to seafood department employees in the Covington store between 1997 and 2005, the Court first notes that the timeframe for the request is inappropriate. The request seeks information regarding seafood employees in the Covington store from 1997 through 2005. However, Fairley testified that she began working in the seafood department in November 1999 and ended in June 2005 when she resigned. R. Doc. 53-1, p. 2.

Nonetheless, during her time in the seafood department her title was "Customer Service" or "Sales Associate." [3] She testified that notwithstanding her title, she was the unofficial manager of the seafood department, responsible for running the department and supervising two associates. By Plaintiff's own admission, while she worked in the seafood department, she was the only associate who performed her job duties and there was no one performing the same job that was making more money than her. R. Doc. 56-1, p. 45. Plaintiff also testified that she was not subject to pay discrimination when she worked in the seafood department. In pertinent parts, Plaintiff's deposition testimony is below:

> Q. And did you feel that you were treated fairly while you were working in the Seafood Department
> A. <u>Yes, sir</u>
> Q. Can you remember making any kind of complaints to Butch (the manager), or anyone else, about anything , --

---

[3] "Q: And what was your title there or your job title then when you moved over to Seafood?" A. Well actually, it was Seafood Department Manager, but it wasn't on paper. Butch was the manager and I was just running the department. Q: So what was your title called? A: Customer Service." R. Doc. 56-1, p. 16.

> A. <u>No, sir</u>
> Q. – any kind of unfair treatment?
> A. No, sir. I can't remember anything.
> Q. Did you feel, at that time, that you were being paid fairly?
> A. It's kind of hard to say because I felt like I was okay with it, but I felt like I deserved more, but I just dealt with it. I was okay with it, but I did feel like I deserved more
> Q: Did you ever feel like there was anyone that was doing the same job as you that was making more than you?
> A. <u>No, not in Seafood because I was the only one</u>.
> Q: So it sounds like basically, where we are, up to this point, if I can kind of, sum it up, at the Covington store the meat cutters made more that the meat wrappers during that four year period, and Joe in the Mandeville store made more than the other Deli/Bakery associates."
> A: <u>Yes, sir</u>
> Q: Okay. And were you aware of any other kind of pay discrepancies or discrimination during your Wal-Mart employment?"
> A: <u>No, sir</u>"

R.Doc. 56-1, 17-18. Plaintiff also testified that during her entire employment in the seafood department, there were two other seafood associates who worked with her – Paula and Doug. Paula is presumably a female and thus not a male comparator. Further, evidence submitted by Wal-Mart reflects that Plaintiff made more than Doug Helmer during the course of their employment. R. Doc. 56-5, p. 1. Because Plaintiff testified that she was not subject to pay discrimination while working in the seafood department and further testified that there was no one performing the same job as her during her time in the seafood department, there are no male comparators. Accordingly, the requests for personnel files and pay data regarding seafood department associates is denied.

Third, regarding the request for Wal-Mart's financial information to support its claim for punitive damages. Courts have held that a Plaintiff must make a factual showing that a viable claim for punitive mange exists before a court can allow discovery of a party's sensitive financial information. *E.E.O.C v. Maha Prabhu, Inc.*, 2008 WL 4126681, at *4 (W.D.N.C. July 18, 2008) (holding that tax returns are relevant to a punitive damages claim only after a plaintiff makes a prima facie showing that it is entitled to punitive damages) (citing *Water Out Drying Corp. v.*

*Allen*, 2006 WL 1642215, at *2 (W.D.N.C. June 7, 2006); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C.1993) (deferring production of financial information until after punitive damages claim survives a motion to dismiss or for summary judgment)). Here although Plaintiff asserts a claim for punitive damages, the viability for such a claim has not been determined by the District Court. Accordingly, Plaintiff's request as to Wal-Mart financial structure and performance of the district in which Plaintiff was employed between 1997 and 2005 to support her claim for punitive damages is denied at this time. The request may be re-urged at a later date upon a showing of a viable punitive damage claim.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that **Plaintiff Motion to Compel (R. Doc. 53)** is **DENIED**.

New Orleans, Louisiana, this 19th day of August 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**