## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RAVION FAIRLEY**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 15-462**

**WAL-MART STORES, INC.**                             **SECTION: "G"(4)**

## ORDER

In this litigation, Plaintiff Ravion Fairley ("Plaintiff") alleges that her former employer, Defendant Wal-Mart Stores, Inc. ("Defendant") discriminated against her based on her gender in violation of Title VII. Before the Court is Defendant's "Motion for Summary Judgment."[1] Having considered the pending motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

### I. Background

#### A.    *Factual Background*

Plaintiff is a former member of the *Wal-Mart Stores, Inc. v. Dukes*[2] class action, in which more than one million women alleged that Wal-Mart retail stores discriminated against its female employees with respect to pay and promotion to management track positions, in violation of Title VII.[3] After the *Dukes* class was decertified by the United States Supreme Court in 2011, Plaintiff filed a charge of discrimination with the EEOC in May of 2012, alleging sex discrimination.[4] The

---

[1] Rec. Doc. 54.

[2] 564 U.S. 338 (2011).

[3] Rec. Doc. 38.

[4] *Id.* at 2.

EEOC issued a right-to-sue notice to Plaintiff on November 20, 2014.[5]

In this litigation, Plaintiff alleges that she first worked for Defendant as a temporary employee in Bogalusa, Louisiana, between 1992 and 1993.[6] Plaintiff was subsequently hired for a permanent position in Covington, Louisiana, where she began working in December 1997 as a Meat Wrapper and Case Worker.[7] In 1999, Plaintiff transferred to the Seafood Department, where she worked as a Manager/Lead Associate, while also fulfilling duties in the Meat Department as needed.[8] Plaintiff worked at that location until she resigned in 2005.[9] In 2009, Plaintiff began working at a Wal-Mart in Mandeville, Louisiana, where she worked until 2011.[10] There, she worked as a full-time Sales Associate in the Deli/Bakery Department, later transferring to a front-end cashier position for approximately one month before resigning in April 2011 for health reasons.[11]

Plaintiff alleges that, during her time at the Covington store, she was hired by Manager Butch Hebert, who was responsible for overseeing the four separate departments within his division: meat, seafood, deli, and the "97 Wall," or cold-cuts.[12] At that time, Plaintiff claims, employees in the Meat Department could be assigned to four separate roles: Lead Associate, Meat

---

[5] *Id.*

[6] Rec. Doc. 57 at 5.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 6.

Cutter, Meat Wrapper, and Case Worker.[13] Plaintiff alleges that, although there was no formal restriction that female employees could not be assigned to the Lead Associate or Meat Cutter positions, Hebert excluded women from those positions, and in fact, during his 50 years in the meat cutting business, he never once had a female Lead Associate and had only one female Meat Cutter, who was hired before he arrived at Wal-Mart.[14]

According to Plaintiff, Hebert's refusal to assign women the duties of Lead Associate or Meat Cutter resulted in female employees receiving drastically lower pay, as those two positions were the highest-earning ones in the Meat Department.[15] Plaintiff alleges that Hebert admitted to excluding women from the higher-earning positions because he did not believe they were fit to perform the "dangerous" job responsibilities of Meat Cutters, which involved using saws and knives, nor the physical task of unloading pallets of meat from delivery trucks.[16] Plaintiff alleges that Hebert not only excluded women from the higher earning positions, but also gave men additional responsibilities, improving their opportunities for advancement.[17] For example, Plaintiff claims, Meat Cutters were trained in all departments within the division, not solely the Meat Department.[18] Plaintiff alleges that the additional responsibilities and expectations were not required by Wal-Mart, but were imparted by Hebert in his sole discretion.[19]

In addition, Plaintiff argues that she was paid less than male employees in her same

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 6–7.

[17] *Id.* at 7.

[18] *Id.* at 8.

[19] *Id.*

position.[20] According to Plaintiff, during her time as a Meat Wrapper and Case Worker, she earned between $6.00 and $7.61 per hour, while two male comparators, Dennis Larsen and Merlin Galey, were paid more, with Larsen earning as much as $9.26 as a Case Worker, and Galy earning $8.52 in the same position.[21] Plaintiff claims that the pay disparities continued when she moved to the Seafood Department in October 1999, which Hebert encouraged her to do.[22] According to Plaintiff, she ended up performing all the duties of a Lead Associate within the Seafood Department, but did not receive the title, nor any additional prestige or pay.[23] Plaintiff avers that her role was seen as simply taking "a little load off" Hebert's "assigned" Lead Associate, Chris DeLuca, but that she earned between $7.62 and $11.59 per hour, while DeLuca earned between $13.00 and $16.50 per hour during the same period.[24] Plaintiff claims that she even earned less than male employees who worked as Sales Associates, including Galy.[25]

Plaintiff argues that the pay disparities worsened after 2001, when Defendant switched to pre-packaged meat, eliminating the need for the Meat Cutter responsibilities.[26] Plaintiff argues that the Meat Cutters no longer performed the "skilled" duties of cutting meat, and were reassigned to Sales Associate positions that were the same as those that had previously been performed by the lower-paid female employees.[27] Nevertheless, Plaintiff argues, the male Meat Cutters retained

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 9.

[25] *Id.*

[26] *Id.*

[27] *Id.*

their higher hourly pay, which resulted in a significant pay gap, with Plaintiff earning between $9.08 and $9.53 per hour in April 2001, and male employees who had previously cut meat earning, on average, between $1 and $4 per hour more than Plaintiff.[28]

## B.    *Procedural Background*

Plaintiff initially filed a complaint in this matter, along with two other plaintiffs, Carasha Isaac and Yalile Leal, on February 12, 2015.[29] On October 14, by joint stipulation of the parties, this Court severed Isaac and Leal's cases from Plaintiff's case.[30] On April 12, 2016, Defendant filed the instant motion for summary judgment.[31] Plaintiff filed an opposition and a request for oral argument on April 19, 2016.[32] On April 27, 2016, the Court heard oral argument,[33] and Defendant filed a reply with leave of Court.[34] On April 28, 2016, the Court ordered the parties to submit supplemental briefing on issues raised during oral argument, including the standard to be applied in determining whether Plaintiff had established a prima facie case and the timeliness of Plaintiff's claims dating from December 1998 to August 2000.[35] On May 4 and 11, 2016, Plaintiff and Defendant filed supplemental memoranda.[36] With leave of Court, Defendant filed an

---

[28] *Id.*

[29] Rec. Doc. 1.

[30] Rec. Doc. 36.

[31] Rec. Doc. 54.

[32] Rec. Doc. 57.

[33] Rec. Doc. 65.

[34] Rec. Doc. 67.

[35] Rec. Doc. 68.

[36] Rec. Docs. 71, 72, 74, 75.

additional supplemental memorandum on September 16, 2016,[37] and Plaintiff filed a response memorandum on September 29, 2016.[38] On October 12, 2016, again with leave of Court, Defendant filed a reply to Plaintiff's response,[39] and on October 21, 2016, Defendant filed a supplemental sur-reply memorandum in support of its motion for summary judgment.[40]

## II. Parties' Arguments

### A.   Defendant's Motion for Summary Judgment

In support of summary judgment, Defendant argues that Meat Cutters were skilled laborers with years of experience as trained butchers, who cut and processed meat using saws, knives and other meat-cutting equipment and were responsible for performing any other jobs that needed to be performed in the Meat, Seafood, or 97 Wall departments, including cleaning, loading and unloading meat from trucks, meat wrapping, and customer service.[41] According to Defendant, Meat Wrappers and Case Workers, on the other hand, performed the unskilled job of wrapping meat, pulling stressed meat from the meat case, and maintaining the meat case.[42]

Specifically with regard to Plaintiff, Defendant claims that, by the time she resigned in March 2005 following a dispute with Hebert, she was earning $11.59 per hour, double her starting salary from December 1997.[43] Defendant argues that, because Plaintiff was the only associate that performed her job duties in the Seafood Department, there were no males who received higher pay

---

[37] Rec. Doc. 99.

[38] Rec. Doc. 108.

[39] Rec. Doc. 117.

[40] Rec. Doc. 131.

[41] Rec. Doc. 54-1 at 4.

[42] *Id.*

[43] *Id.* at 5.

for performing the same job, and Plaintiff admits she was not subject to pay discrimination while in the Seafood Department.[44]

According to Defendant, Plaintiff filed an EEOC charge in May 2012, but did not identify any specific dates or acts of alleged gender discrimination, or any facts such as her job, pay rate, the alleged pay rates that male associates performing the same job may have received, or the qualifications or experience of any comparators or the identity of any decision makers.[45] Defendant alleges that, when the EEOC asked Plaintiff to provide specific facts regarding her claims, the only additional information she provided was that she believed that men received higher raises and bigger bonuses, and that at the Covington store, men were Meat Cutters and women were Meat Wrappers, who earned less money despite having more responsibilities.[46] According to Defendant, Plaintiff alleged that there was only one female Meat Cutter in Covington, and that she did not last long because the male Meat Cutters commented that it "didn't look right for a woman to be cutting the meat."[47] Nevertheless, Defendant contends, Plaintiff did not identify any male comparators, her job titles or pay rates, or the dates of any alleged discrimination, and her charge was dismissed on November 20, 2014.[48]

Defendant avers that Plaintiff cannot state a prima facie claim against Defendant under Title VII, and that, in addition, her claims are either procedurally barred based on her failure to exhaust her administrative remedies, or are untimely.[49] Defendant first argues that, to establish a

---

[44] *Id.*

[45] *Id.* at 6.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 6–7.

[49] *Id.* at 8.

prima facie case of gender-based pay discrimination, a plaintiff must show that she performed a job that required equal skill, effort and responsibility as the work performed by higher paid workers of the opposite sex, after which the burden shifts to the employer to demonstrate that the disparate wage payments were made pursuant to a: (1) seniority system; (2) merit system; (3) system which measures earnings by quantity or quality of production; or (4) differential based upon any factors other than sex.[50] According to Defendant, such factors can include "[d]ifferent job levels, different skill levels, previous training, and experience."[51] Once an employer carries its burden of production, Defendant asserts, the plaintiff must prove by a preponderance of the evidence that the employer's reasons are a mere pretext for discrimination.[52]

Here, Defendant claims, Plaintiff has dismissed her claim relating to the Mandeville store, and therefore, her remaining claim regarding the Covington store is based solely on her opinion that she should have been paid as much as a Meat Cutter because she feels that Meat Wrappers had more responsibilities.[53] However, Defendant avers, Plaintiff cannot establish a prima face case of gender discrimination because it is undisputed that the Meat Cutter and Meat Wrapper jobs were substantially different, and Plaintiff was not paid less than any similarly situated male who performed the same job.[54] Defendant argues that Plaintiff was not discriminated against at the Covington store because, even taking as true Plaintiff's opinion that Meat Wrappers had "more work to do" than Meat Cutters, it is undisputed that being a Meat Wrapper did not require the same

---

[50] *Id.* at 8–9 (citing *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 798 (N.D. Tex. 1998); 29 U.S.C. § 206(d)(1)).

[51] *Id.* at 9 (quoting *Pouncy v. Prudential Ins. Co.*, 668 F.2d 795, 803 (5th Cir. 1982)).

[52] *Id.*

[53] *Id.*

[54] *Id.*

level of skill, training, experience, or responsibility as being a Meat Cutter.[55]

According to Defendant, the Meat Wrapper job was an unskilled position that required no experience and simply involved wrapping meat and maintaining the meat case, whereas Meat Cutters were skilled professional butchers with years of training and experience, who cut the meat using saws and other dangerous equipment, unloaded the trucks, stacked pallets, cleaned the departments, wrapped meat, served customers, and performed any duties necessary in the Meat, Seafood, and "97 Wall" departments.[56] Therefore, Defendant claims, Meat Cutters were paid more than most other hourly associates at Defendant stores, as they were capable of performing every job duty in every department under Hebert's supervision, whereas Meat Wrappers could only perform their own job duties.[57] Moreover, Defendant claims, Plaintiff cannot contend that the Meat Cutter position was open only to males, as she has acknowledged that there was a female Meat Cutter in Covington for a short time, and Plaintiff did not know whether that female Meat Cutter earned more or less than the male Meat Cutters.[58] Defendant contends that although no women applied for a Meat Cutter position during Plaintiff's employment in the Meat Department, there was no rule or policy that prevented them from doing so, and in fact, Plaintiff admitted that she did not apply for the position because she was afraid of working with the meat saws.[59]

Next, Defendant argues that Plaintiff's individual gender discrimination claims are procedurally barred and/or untimely.[60] According to Defendant, a Title VII plaintiff must exhaust

---

[55] *Id.* at 9.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.* at 10.

administrative remedies before commencing an action in federal court, which occurs when a plaintiff files a timely charge with the EEOC and receives a statutory notice of the right to sue.[61] Defendant avers that "[i]n order to exhaust administrative remedies, the claimant is required to demonstrate good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation."[62] Defendant argues that a Title VII claim is limited to the scope of the plaintiff's administrative charge and to the EEOC investigation that could reasonably be expected to grow out of the charge.[63]

According to Defendant, the plain language of 42 U.S.C. § 2000e-5 states that a person filing an EEOC charge must provide adequate notice of the alleged unlawful employment practice, including the date, place and circumstances of the alleged unlawful employment practice.[64] Defendant avers that the Supreme Court has declared that in order to satisfy administrative requirements, a charging party must timely allege each separate and distinct discriminatory act in her charge or lose the ability to recover for it.[65] Here, Defendant argues, Plaintiff's EEOC charge was legally deficient because it did not identify any alleged unlawful employment practice, much less any specific act of discrimination, when the alleged discrimination occurred, who received more favorable treatment, or who made the pay or promotion decisions.[66] Instead, Defendant asserts, Plaintiff simply identified herself as a former *Dukes* class member who was employed by

---

[61] *Id.* (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Firmin v. Richard Const., Inc.*, No. 12-1391, 2012 WL 5332998, at *3 (E.D. La. Oct. 26, 2012)).

[62] *Id.* (quoting *Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990)).

[63] *Id.* at 11 (citing *Pacheco v. Mineta*, 448 F.3d 783, 795 (5th Cir. 2006)).

[64] *Id.*

[65] *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002)).

[66] *Id.* at 11–12.

Wal-Mart from 1997-2011, and her charge was therefore completely devoid of individual factual allegations, thus failing to meet the statutory requirements.[67] Furthermore, Defendant argues, Plaintiff failed to demonstrate good faith participation in the administrative process because she failed to provide necessary information requested by the EEOC to investigate her charge.[68] Defendant argues that Plaintiff's vague allegations to the EEOC could not have put Defendant on notice about any specific act of alleged discrimination, and Plaintiff additionally failed to perfect her charge by failing to cooperate in the proceedings and failing to provide the bare minimum of facts requested by the EEOC.[69]

Finally, Defendant contends that even if Plaintiff's claims were not procedurally barred, her claims relating to alleged pay discrimination between December 1997 and August 23, 2000, are time-barred because any claims based on conduct that allegedly occurred prior to August 23, 2000, or three hundred days before the *Dukes* class action lawsuit commenced on June 19, 2001, were already time barred when the *Dukes* class action complaint was filed.[70]

**B.    *Plaintiff's Opposition to the Motion for Summary Judgment***

In opposition, Plaintiff first describes the procedural background of this case, and alleges that, when the initial *Dukes* class was certified, the Court chose December 26, 1998, as the date from which the 300-day filing period preceding the EEOC charge filed by the named plaintiff, Stephanie Odle, would run.[71] Thereafter, Plaintiff avers, once the Supreme Court decertified the

---

[67] *Id.* at 12.

[68] *Id.*

[69] *Id.*

[70] *Id.* at 13–14 (citing *Morgan*, 536 U.S. at 108–09).

[71] Rec. Doc. 57 at 2.

*Dukes* class action, Wal-Mart agreed to extend the tolling of the statute of limitations to "all whose claims were raised by the class certification."[72] According to Plaintiff, Defendant agreed that all whose claims were raised by the class certification could "start the clock fresh" under the applicable EEOC filing period, even with respect to former class members who never filed EEOC charges.[73] Plaintiff contends that the district court then extended the tolling period and ordered that former class members who had never filed an EEOC charge would have until May 25, 2012, to file charges with the EEOC in states that had 300-day limits, such as Louisiana.[74] Therefore, her claims are not time-barred.

Plaintiff argues that genuine issues of material fact preclude summary judgment on her sex discrimination claim. According to Plaintiff, in order to establish a prima facie case of discrimination, she must prove that she was a member of a protected class and that she was paid less than a non-member for work requiring substantially the same responsibility.[75] Plaintiff claims that it is central that she and the alleged comparator were similarly situated from the perspective of the employer at the time of the relevant employment decisions.[76] Here, Plaintiff avers, she can easily establish a prima facie case of sex discrimination because she: (1) received unequal pay as a result of discriminatorily motivated sex-segregated job classifications within the Meat Department; and (2) experienced pay discrimination due to male comparators within her same positions—Meat Wrapper/Case Worker, department Manager/Lead Associate, and Sales

---

[72] *Id.* at 3.

[73] *Id.* at 4.

[74] *Id.* at 4. Wal-Mart agrees that, in Louisiana, EEOC Charges must be filed within 300 days. Rec. Doc. 54-1 at 15 n.60.

[75] *Id.* at 11 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)).

[76] *Id.* at 12 (citing *Perez v. Tex. Dep't of Criminal Justice Institutional Div.*, 395 F.3d 206, 210 (5th Cir. 2004)).

Associate—earning higher pay despite performing the same job responsibilities.[77]

Regarding job classifications, Plaintiff alleges that during Hebert's 20 years as Meat Department Manager, he never assigned a female employee to the positions of Lead Associate or Meat Cutter, and instead, women like Plaintiff were concentrated in lower paying roles like Meat Wrappers and Case Workers.[78] According to Plaintiff, Hebert thought she was an excellent employee but nevertheless never assigned her to cut meat, and as a result she earned substantially less than males who cut meat, which is alone sufficient to raise an inference of discrimination.[79] Plaintiff contends that Hebert's discrimination is not only inferred from statistics, but also is confirmed by his own words, quoting deposition testimony in which Hebert stated that he had never asked female Case Workers to load or unload trucks "because of their stature" and that Meat Cutters work with "dangerous saws . . . [and] knives all day long."[80] Plaintiff asserts that Hebert believed that the nature of some of the duties required of a Meat Cutter were inherently incompatible for female employees to complete by virtue of their gender, and alleges that gender stereotyping permeated the Meat Department, quoting Lead Associate Chris DeLuca as stating that men were stronger and could unload pallets better than women, and James Duncan, a Meat Cutter, saying that women could not "throw a truck" because of the weight of the boxes.[81] According to Plaintiff, this gender stereotyping effectively precluded women from earning higher pay, training opportunities, and overall advancement opportunities.[82]

---

[77] *Id.* at 13.

[78] *Id.* at 14.

[79] *Id.*

[80] *Id.* at 15.

[81] *Id.*

[82] *Id.*

Plaintiff argues that Defendant has oversimplified her claim by insisting that the "determinative issue" is whether the Meat Cutter and Meat Wrapper were "essentially the same."[83] Plaintiff asserts that this argument incorrectly assumes that the job classifications in question were legitimate and non-discriminatory.[84] Plaintiff argues that Defendant was unable to produce a single job description for the different categories of workers, and asserts that Defendant's pay data undisputedly illustrates that every employee within the Meat Department was categorized in the same position, as a "processor," which was later reclassified to "Sales Associate."[85] Therefore, Plaintiff contends, she and her male coworkers were similarly situated "from the perspective of the employer."[86] However, Plaintiff argues, the data shows that male processors were paid substantially more than female processors, demonstrating that the classification system was built on a foundation of unlawful gender stereotypes.[87]

According to Plaintiff, Defendant's explanations for the alleged disparities are pretextual.[88] Plaintiff rebuts Defendant's argument that the difference in pay was due to the fact that Meat Cutters were skilled professionals by arguing that Hebert himself has testified that a person did not need prior cutting experience to be considered for the Meat Cutter position.[89] In fact, Plaintiff avers, Hebert himself could simply train a Meat Cutter with no prior experience, which Hebert

---

[83] *Id.*

[84] *Id.* at 16.

[85] *Id.*

[86] *Id.* (quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002)).

[87] *Id.*

[88] *Id.*

[89] *Id.*

allegedly admitted to doing with other employees.[90] Plaintiff cites *Babrocky v. Jewel Food Co.*, a Seventh Circuit case she claims concluded that total sex segregation of Meat Cutters and Meat Wrappers raised a strong inference that the defendant was discriminatory where no special qualifications were needed to become apprenticed as a Meat Cutter.[91] Here, Plaintiff argues, although she had no prior cutting experience, that was not a barrier to her according to Hebert's testimony, and therefore, the only barrier was his own discriminatory animus regarding what he believed women could and should do by virtue of their gender.[92]

Similarly, Plaintiff alleges, although Defendant argues that no women applied for the Meat Cutter position, Hebert admitted that he did not post job openings for Meat Cutters, and instead often self-selected replacements without mentioning the openings to Covington employees.[93] Furthermore, Plaintiff avers, Hebert openly prohibited women in the Meat Department from doing some of the jobs required of the Meat Cutter, such as unloading trucks, because of their gender, and the only woman who was ever permitted to act in any type of Meat Cutter capacity was a temporary employee who ultimately complained of gender discrimination and left the store.[94] Plaintiff again relies on the Seventh Circuit decision in *Babrocky* for the proposition that, "[b]ecause an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even nonapplicants can in appropriate circumstances qualify for relief under Title VII."[95]

---

[90] *Id.*

[91] *Id.* at 16–17 (citing 773 F.2d 857, 869 (7th Cir. 1985)).

[92] *Id.* at 17.

[93] *Id.*

[94] *Id.*

[95] *Id.* (quoting *Babrocky*, 773 F.2d at 867).

15

Next, Plaintiff avers that in each of her three positions, she was paid less than male employees performing the same job responsibilities.[96] First, Plaintiff avers that as a Meat Wrapper/Case Worker between December 1997 and October 1999, she earned between $6.00 and $7.61 per hour, but as Hebert only assigned female employees to the Meat Wrapper position, there are no male comparators in that position.[97] However, Plaintiff claims, there are two male comparators who were assigned to the Case Worker position, Merlin Galy and Dennis Larsen.[98] According to Plaintiff, Defendant's records show that although Plaintiff was hired just six months after Galy, Plaintiff had more than a year of previous experience with Defendant, neither Galy nor Plaintiff cut meat, and both Galy and Plaintiff were characterized as "processors," Galy nevertheless earned $7.50 per hour as of December 1997, whereas Plaintiff earned just $6 per hour.[99] Thus, Plaintiff argues, even though she and Galy were similarly situated, the disparity in their pay persisted until Galy moved to the Seafood Department in August 1999, at which point he earned $8.52 per hour and Plaintiff earned $7.61 per hour.[100] Similarly, Plaintiff avers, Larsen was a Case Worker/Sales Associate in the Meat Department, and although they were similarly situated, Larsen earned as much as $9.26 per hour, while Plaintiff's highest pay in the same position was $7.61 per hour.[101]

Furthermore, Plaintiff avers, the pay disparities continued when she assumed the responsibilities of Manager of the Seafood Department, even though no official Manager/Lead

---

[96] *Id.* at 18.

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.* at 18–19.

[101] *Id.* at 19.

Associate position existed.[102] According to Plaintiff, Hebert stated that he encouraged Plaintiff to take on the Seafood Department Manager position because it was the highest paid position she could get at that time. Although, Plaintiff argues, she could have earned more money if she cut meat, and there was in-store training available in which Plaintiff could have acquired the necessary skills to cut meat, Hebert never suggested to Plaintiff that she cut meat.[103] According to Plaintiff, although Hebert explained that he never asked her to cut meat because she never asked, she also never asked to work in the Seafood or Deli departments, but Hebert nevertheless encouraged her to do so, and also later stated "that meat cutting position isn't for everyone."[104]

Furthermore, Plaintiff argues that even with Hebert's stated purpose of ensuring that she earn more money, she was still paid less than her male comparators after assuming the duties of Seafood Department Manager.[105] According to Plaintiff, Chris DeLuca earned $3 per hour more than Plaintiff for performing the same duties, even though both were employed in the same department, in the same store, and were supervised by the same individual.[106] Plaintiff alleges that she was also paid less than male Sales Associates within the Deli Department, namely Galy, who earned $8.52 per hour in October of 1999 whereas Plaintiff was paid $7.61.[107]

In addition, Plaintiff avers that although Defendant asserts that she has not contended that she was subject to discrimination within the Seafood Department, in fact, Plaintiff has stated that she did not feel she was compensated fairly, and did not previously have any awareness, now

---

[102] *Id.*

[103] *Id.* at 19–20.

[104] *Id.* at 20.

[105] *Id.*

[106] *Id.*

[107] *Id.* at 20–21.

supported by data, that there were pay discrepancies.[108] Plaintiff argues that, in light of the fact

that she did not have pay data available to her, and that Defendant prohibited discussing pay in the

workplace, it is unsurprising that she would later testify that it was "kind of hard to say" whether

there were pay discrepancies, but that she "felt" like she deserved more.[109] Plaintiff avers that

"Defendant covered up its own discriminatory practices at the time, and now attempts to benefit

from its illegal policies," and therefore Plaintiff's testimony does not constitute an admission.[110]

Notably, Plaintiff alleges, although in April 2001 Wal-Mart switched to pre-packaged meat,

eliminating the need for Meat Cutter responsibilities, the male employees who were former cutters

were reassigned to Sales Associate positions but continued to retain their higher hourly pay.[111]

Finally, Plaintiff argues that she has exhausted her administrative remedies and her claims

are timely.[112] According to Plaintiff, she is entitled to rely on Stephanie Odle's charge of

Discrimination, which was filed in October 1999, to establish the timeliness of her own EEOC

charge.[113] Plaintiff avers that it is undisputed that Odle filed a timely EEOC charge in October

1999 that underlies the allegations in *Dukes*, and the scope of the *Dukes* class was set in reference

to her October 1999 charge, encompassing conduct occurring on or after December 26, 1998—

300 days prior to Odle's charge.[114] Plaintiff contends that under the single filing rule, she is entitled

to rely on Odle's original charge to establish the timeliness of her own charge, and therefore her

---

[108] *Id.* at 21.

[109] *Id.*

[110] *Id.*

[111] *Id.* at 21 n.12.

[112] *Id.* at 21.

[113] *Id.* at 22.

[114] *Id.*

charge is timely even with respect to conduct occurring prior to August 23, 2000, because her charge relates back to Odle's charge and the time period it covered.[115] Furthermore, Plaintiff argues that although Defendant has argued on three separate occasions that the single-filing rule should not apply to *Dukes* claims, the argument was rejected twice by the district court in *Dukes*, and rejected separately by the District of Minnesota in *Catlin v. Wal-Mart Stores, Inc.*[116] Therefore, Plaintiff argues, Defendant is estopped from now litigating the issue a fourth time.[117]

Next, Plaintiff contends that she set forth sufficient detail in her EEOC to administratively exhaust her remedies by stating that she was a member of the *Dukes* class, that her EEOC charge pertained to conduct encompassed by the certified class, and by identifying: (1) the stores where she worked; (2) her dates of employment; (3) that she was an hourly employee; (4) the type of discrimination alleged; and (5) the context of Defendant's discriminatory conduct, as well as by answering a questionnaire provided by the EEOC.[118] Therefore, Plaintiff argues, she participated in good faith in the administrative process and provided sufficient detail to put Defendant on notice of the practices complained of and where they occurred.[119] Moreover, Plaintiff avers, the law did not require her to "recite a specific incantation" or "allege a prima facie case before the EEOC."[120] Therefore, Plaintiff argues, she gave a clear and concise statement of the facts, and no more detail was required.[121]

---

[115] *Id.*

[116] *Id.* at 22–23 n.13 (citing 123 F. Supp. 3d 1123 (D. Minn. 2015)).

[117] *Id.*

[118] *Id.* at 24.

[119] *Id.*

[120] *Id.* (quoting *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006)).

[121] *Id.*

### C.      Defendant's Reply in Support of Summary Judgment

In its reply to Plaintiff's opposition, Defendant argues that Plaintiff failed to identify any disputed issues of material fact.[122] Defendant asserts that Plaintiff was not discriminated against in the Meat Department, because there was no segregation of job duties based on gender.[123] Defendant again emphasizes that Meat Cutters were skilled laborers who took years to learn their trade, while Meat Wrappers were unskilled workers who were simply required to wrap meat and maintain the meat case.[124] Contrary to Plaintiff's characterization of Hebert's testimony, Defendant argues, Hebert never once suggested that he excluded women from any positions.[125] Rather, Defendant contends, Hebert simply suggested that he did not have women Meat Wrappers unload trucks because that was a Meat Cutter duty.[126]

Defendant further argues that the current matter is entirely distinguishable from the case cited by Plaintiff, *Babrocky v. Jewel Food Co.*[127] Unlike the Plaintiff here, Defendant asserts, the *Babrocky* plaintiffs alleged that the defendant employer had a pattern and practice of discriminatory hiring and that female employees knew it was futile to apply for certain positions.[128] The fact that neither Plaintiff nor any other female employee applied for a Meat Cutter position, Defendant argues, does not establish that Meat Department jobs were segregated by gender.[129] It

---

[122] Rec. Doc. 67 at 1.

[123] *Id.* at 2.

[124] *Id.*

[125] *Id.* at 2–3.

[126] *Id.* at 2.

[127] *Id.* at 3 (citing 773 F.2d 857, 869 (7th Cir. 1985)).

[128] *Id* (citing 773 F.2d at 860, 867).

[129] *Id.*

is critical, Defendant maintains, that there was a female Meat Cutter in this case and that there were male Meat Case Workers, below the Meat Wrappers in the Meat Department hierarchy.[130] Moreover, Defendant argues that Plaintiff did not apply for a Meat Cutter position, because she did not want to be a Meat Cutter.[131] Defendant notes that neither Plaintiff nor any other female ever complained about gender discrimination at the Covington store.[132] Moreover, Defendant argues that the Meat Department Manager Hebert was in no way required to encourage her to apply for a job.[133]

Defendant next argues that Plaintiff was not paid less than similarly situated comparators in the Meat Department. Although Plaintiff claims that two other males, Merlin Galy and Dennis Larsen, were also Meat Case Workers, Defendant argues, Hebert identified Galy as a Meat Cutter and Larsen was not hired until Plaintiff moved to the Seafood Department.[134] Furthermore, Defendant contends that Plaintiff can only assume that Galy and Larsen were Meat Case Workers based on their employment histories produced in discovery, but according to Defendant, it is "essentially impossible" to accurately determine from those employment histories what jobs they held and when.[135] If Galy was a Meat Cutter, Defendant argues, he deserved to be paid more.[136] Even if Galy performed similar duties as Plaintiff, Defendant argues, it wouldn't matter, because the only other Meat Wrapper identified by Plaintiff, Kelly Blanchard, was a female and made more

---

[130] *Id.*

[131] *Id.* at 4.

[132] *Id.*

[133] *Id.*

[134] *Id.*

[135] *Id.* at 4–5.

[136] *Id.* at 5.

than Galy and more than some of the Meat Cutters.[137] Because Blanchard, a female, was paid more than any of Plaintiff's purported comparators, Defendant contends, Plaintiff's alleged pay disparity could not have been based on gender.[138]

Defendant next argues that Plaintiff "expressly and unequivocally" testified that she was not discriminated against during her time in the Seafood Department because she did not have any comparators who performed her same job duties.[139] The only two Seafood Department associates identified by Plaintiff, Doug and Paula, both reported to Plaintiff and were paid less than her, according to Defendant.[140] Defendant contests Plaintiff's claim that Galy was a comparator in the Seafood Department and asserts that even if he was a comparator, Galy was paid less than Plaintiff at various times.[141] Defendant further argues that Plaintiff never became a Department Manager/Lead Associate when she moved to the Seafood Department, and as a result, Chris DeLuca, the Lead Associate over the Meat and Seafood Departments, is not a comparator and should not have been paid the same as Plaintiff.[142] Defendant also maintains that Plaintiff was not adversely affected when the Meat Cutter job was eliminated in approximately 2001 and Meat Cutters were permitted to keep their higher salaries, because she was never similarly situated to the Meat Cutters and Plaintiff would have no way to determine which jobs the former Meat Cutters performed since they were all classified as Sales Associates.[143]

---

[137] *Id.*

[138] *Id.* at 5–6.

[139] *Id.* at 6.

[140] *Id.*

[141] *Id.* at 7.

[142] *Id.* at 7–8.

[143] *Id.* at 8.

Finally, Defendant argues that Plaintiff's claim for gender discrimination while working in the Seafood Department is barred because it is clearly outside the scope of Plaintiff's EEOC charge, which Defendant argues related only to pay disparities between Plaintiff and Meat Cutters.[144] Moreover, Defendant argues, Plaintiff's EEOC charge did not contain any facts other than her dates and locations of employment, and the supplemental facts she added to her EEOC complaint were "insufficient to constitute a viable EEOC charge."[145] Finally, Defendant argues that some or all of Plaintiff's claims are untimely and that Plaintiff's opposition to the motion for summary judgment did not contest Defendant's argument that the tolling of Plaintiff's claim began with the filing of the *Dukes* class action lawsuit and would only toll claims for conduct on or after August 23, 2000.[146] Even if Plaintiff is correct that tolling would extend to the period from December 26, 1998, onward, Defendant argues, Plaintiff admits that any claims arising before December 26, 1998, would be time barred.[147]

**D.      *Plaintiff's May 4, 2016, Supplemental Memorandum in Opposition to the Motion***

In her May 4, 2016, supplemental memorandum in opposition to the motion for summary judgment, Plaintiff argues that Defendant violated Title VII in two ways. First, Plaintiff argues that she received unequal pay as a result of discriminatorily motivated sex-segregated job classifications within the Meat Department and was precluded from higher earning positions in the Meat Department and paid less than male employees performing substantially similar job functions

---

[144] *Id.* at 9–10.

[145] *Id.*

[146] *Id.* at 10.

[147] *Id.*

within the Meat Department.[148] Second, Plaintiff argues that she experienced pay discrimination when she was transferred to the Seafood Department and assumed duties of the Seafood Department Manager/Lead Associate.[149] Plaintiff asserts that she was paid less than the male Lead Associate in her same division and a meat Sales Associate in her own department during the same time period.[150]

In order to establish a prima facie case, Plaintiff argues, she must show that she "was a member of a protected class and that [she] was paid less than a non-member for work requiring substantially the same responsibility."[151] Plaintiff maintains that she need not prove that she is "identical" to an alleged comparator and that instead, all that is required is "near identity."[152] What is important, Plaintiff asserts, is that a plaintiff and an alleged comparator are similarly situated from the perspective of the employer at the time of the relevant employment decisions.[153] Plaintiff states that a plaintiff can prove intentional discrimination under Title VII with either direct or circumstantial evidence, and in this case, Plaintiff maintains that she has provided circumstantial evidence of intentional discrimination.[154]

---

[148] Rec. Doc. 71 at 1–2.

[149] *Id.*

[150] *Id.* at 2.

[151] *Id.* (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)).

[152] *Id.* (citing *Lee v. Kan. City. S. Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009)).

[153] *Id.* (citing *Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004)).

[154] *Id.* (citing *Jones v. Sewerage & Water Bd. Of New Orleans*, 2015 WL 2354079, at *3 (E.D. La. May 15, 2015 (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

When circumstantial evidence of discrimination is presented, Plaintiff argues, the *McDonnell Douglas* framework applies.[155] Plaintiff asserts, however, that the *McDonnell Douglas* framework was intended to be a flexible one and that no single formulation of the prima facie evidence test may fairly be expected to capture the many guises in which discrimination may appear.[156] The ultimate inquiry, according to Plaintiff, is whether she has set forth sufficient evidence that may lead a reasonable fact-finder to infer discrimination.[157] The importance of the *McDonnell Douglas* framework, Plaintiff argues, is not "its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion . . . ."[158]

The Fifth Circuit has held, Plaintiff argues, that a more flexible burden-shifting standard should be applied when necessitated by the particular facts of a case.[159] Plaintiff asserts that one way that she can prove gender discrimination is through comparator evidence, which allows her to meet her prima facie case without applying a more flexible burden-shifting standard.[160] Regarding Plaintiff's claims of sex-segregated job classifications, Plaintiff argues that the Court could find under a more flexible burden-shifting standard that she has offered sufficient evidence to create an inference that Defendant's employment decisions were motivated by illegal criterion,

---

[155] *Id.* at 3 (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

[156] *Id.* (citing *Barnes v. Yellow Freight Systems, Inc.*, 778 F.2d 1096, 1100 (5th Cir. 1985); *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir. 1982)).

[157] *Id.* at 4.

[158] *Id.* (quoting *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)).

[159] *Id.* at 4–5 (citing *Byrd*, 687 F.3d at 87).

[160] *Id.* at 5.

and according to Plaintiff, that is all that is required to overcome summary judgment.[161] Finally, Plaintiff argues that Defendant's purported treatment of female Meat Department employee Kelly Blanchard has no bearing on the validity of Plaintiff's discrimination claims, because the primary focus of Title VII is the protection of the individual employee, rather than the protection of the minority group as a whole.[162] As a result, Plaintiff contends, Defendant cannot escape liability for discriminating against Plaintiff even if it can prove that it treated other female employees in a favorable manner.[163]

**E.  Defendant's May 4, 2016, Supplemental Memorandum in Support of the Motion**

In its May 4, 2016, supplemental memorandum in support of the motion for summary judgment, Defendant argues that the Court should reject the reasoning of the District of Minnesota in *Catlin v. Wal-Mart Stores, Inc.* and hold that Plaintiff's claims arising before August 23, 2000, are time-barred.[164] Instead of applying the reasoning in *Catlin*, Defendant argues, the Court should apply the reasoning of a Northern District of Alabama decision, *Cooks v. Wal-Mart Stores, Inc.*[165] According to Defendant, *Cooks* addressed the specific issue before the Court, *i.e.* the circumstances that permit a Title VII plaintiff to "piggyback" in relation to an EEOC charge filed by another person.[166] On the other hand, Defendant argues, *Catlin* addressed the issue of whether a plaintiff, who was no longer employed by Wal-Mart when the *Dukes* class action was filed, was

---

[161] *Id.* at 5–6.

[162] *Id.* at 6 (citing *Conn. v. Teal*, 457 U.S. 440, 453-54 (1982)).

[163] *Id.* (citing *Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 587-88 (7th Cir. 2011)).

[164] Rec. Doc. 72 at 1–2 (citing 123 F. Supp. 3d 1123 (D. Minn. 2015)).

[165] *Id.* at 2 (citing No. 2:13-CV-526-RDP, 2013 WL 5350661 (N.D. Ala. Sept. 23, 2013)).

[166] *Id.*

a former class member entitled to *American Pipe* tolling, which, according to Defendant, is not at issue in this case.[167]

Defendant asserts that the district court in *Cooks* properly determined that the plaintiff, a putative member of the originally proposed class in *Dukes*, could not piggyback on the named plaintiff's EEOC charge, because the plaintiff could not establish that she was entitled to do so under Eleventh Circuit precedent, which requires the individual claims of the filing and non-filing plaintiff to arise out of similar discriminatory treatment in the same time frame.[168] Defendant asserts that because the named plaintiff in the *Dukes* case (Stephanie Odle) did not raise any disparate pay issues in her EEOC charge, the court held that the *Cooks* plaintiff's claims of disparate pay could not piggyback on Odle's EEOC charge.[169]

Defendant argues that the "single filing rule" in the Fifth Circuit is similar to the Eleventh Circuit standard, because "the plaintiff must be similarly situated to the person who actually filed the EEOC charge."[170] Defendant argues that Plaintiff, like the plaintiff in *Cooks*, is only asserting a claim for gender pay discrimination. As a result, Defendant maintains, Plaintiff is not similarly situated to Odle and may not piggyback on Odle's charge under the Fifth Circuit standard.[171] Defendant argues that the Court should reject the *Catlin* court's conclusion that former *Dukes* class members' claims were tolled from the date of the filing of Odle's EEOC charge in October 1999, because the district court in that case did not consider the elements necessary for the single-filing

---

[167] *Id.*

[168] *Id.* at 3 (citing *Cooks*, 2013 WL 5350661, at *3*).

[169] *Id.* at 3–4.

[170] *Id.* at 4 (citing *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 596, 599 (5th Cir. 2006); *Bettcher v. The Brown Schools, Inc.*, 262 F.3d 492, 494 (5th Cir. 2001)).

[171] *Id.*

exception to apply in the Fifth Circuit.[172] Finally, Defendant argues that even under the reasoning in *Catlin*, the tolling of claims was extended to the date Odle filed her EEOC charge on October 22, 1999.[173] Thus, Defendant contends, any of Plaintiff's claims arising before the filing of Odle's EEOC charge are time-barred.[174]

### F.   *Plaintiff's May 11, 2016, Supplemental Memorandum in Opposition to the Motion*

In Plaintiff's May 11, 2016, supplemental memorandum in opposition to the motion for summary judgment, she argues that her claims are not time-barred and that the Court should adopt the reasoning set forth in *Catlin* regarding the timeliness of Plaintiff's claims.[175] Plaintiff contends that her EEOC charge relating to conduct prior to August 23, 2000, is timely because her charge relates back to Stephanie Odle's charge.[176] Plaintiff argues that the *Cooks* decision to the contrary is an outlier and is inconsistent with other federal court decisions on the issue.[177] Plaintiff notes that in *Leal v. Wal-Mart Stores, Inc.*, a magistrate judge in the Eastern District of Louisiana also concluded that a former *Dukes* class member could rely on Odle's EEOC charge, which included conduct occurring on or after December 26, 1998.[178]

Next, Plaintiff argues that *Cooks* has no bearing on her case, because it was determined under Eleventh Circuit law, while *Leal* was decided under Fifth Circuit precedent.[179] Moreover,

---

[172] *Id.* at 5.

[173] *Id.* at 5–6 (citing *Catlin*, 123 F.Supp.3d at 1132).

[174] *Id.* at 6.

[175] Rec. Doc. 74 at 1.

[176] *Id* at 2.

[177] *Id.* (citing *Catlin*, 2015 WL 4964671, at *7-8; *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 4329009, at *9 (N.D. Cal. Sept. 21, 2012)).

[178] *Id.* at 3 (citing No. CV 15-5768, 2016 WL 2610020, at *1 (E.D. La. May 6, 2016)).

[179] *Id.* at 4.

according to Plaintiff, the *Cooks* court based part of its analysis on a Norther District of Texas decision, which was later reversed and remanded by the Fifth Circuit.[180] Finally, Plaintiff concludes that the *Cooks* court reasoning was simply incorrect and inconsistent with the definition of the *Dukes* class certified by the district court, which expressly includes "all women employed at any Wal-Mart domestic retail store at any time since December 26, 1998 . . . ."[181] Plaintiff argues that the Court should adopt the reasoning set forth in *Catlin* and *Leal* to hold timely Plaintiff's claims from December 26, 1998, to August 23, 2000.[182]

## G.   *Defendant's May 11, 2016, Supplemental Memorandum in Support of the Motion*

In its May 11, 2016, supplemental memorandum in support of the motion for summary judgment, Defendant argues that Plaintiff cannot establish a prima facie case of discrimination.[183] Defendant argues that it is undisputed that the Meat Wrapper job did not require equal skill, effort, or responsibility as the Meat Cutter job and that Plaintiff consequently cannot establish a prima facie case of pay discrimination.[184] Another reason Plaintiff cannot establish a prima facie case of pay discrimination, Defendant argues, is that Plaintiff was paid more than two male Meat Case Workers for the same time period.[185] Moreover, Defendant asserts, Plaintiff's testimony, supported by the testimony of "all other witnesses," confirmed that there was only one other person in the Meat Department who was similarly situated to Plaintiff, the other Meat Wrapper, Kelly

---

[180] *Id.* (citing *Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315 (5th Cir. 2014)).

[181] *Id.* (citing *Leal*, 2016 WL 2610020, at *6 (citing *Dukes v. Walmart*, F.R.D. 137, 188 (N.D. Cal. 2004)).

[182] *Id.*

[183] Rec. Doc. 75 at 1–2.

[184] *Id.* at 2.

[185] *Id.* at 2–3.

Blanchard.[186] Because she was paid more than any male Meat Department Associate that was not a Meat Cutter and even more than some Meat Cutters, Defendant argues, Plaintiff cannot establish a prima facie case of gender pay discrimination relating to her employment as a Meat Wrapper.[187] Defendant also argues that Plaintiff cannot maintain a discrimination claim relating to her employment in the Seafood Department because she testified that she was treated fairly while working in the Seafood Department and that she did not have any comparators.[188]

Next, Defendant argues that no Fifth Circuit decisions cited by Plaintiff applied the *McDonnell Douglas* framework in a flexible way.[189] Even if the Court were to apply a flexible standard and Plaintiff could establish a prima facie case of discrimination, Defendant argues, there were legitimate reasons for Plaintiff's pay other than sex and "there is absolutely no evidence in the record of any kind of gender discrimination whatsoever."[190] Defendant argues that Plaintiff's circumstantial comparator evidence fails, because it is undisputed that Meat Cutters were experienced and deserved higher pay and that there were male Meat Case Workers who were paid less than Plaintiff.[191] Defendant further argues that there is no support for Plaintiff's allegations of sex-segregated job classification, because evidence confirms that there was a female Meat Cutter, that Hebert would have hired a female Meat Cutter but none applied, and that Plaintiff and Blanchard were paid more as Meat Wrappers than the identified male Meat Case Workers.[192]

---

[186] *Id.* at 3.

[187] *Id.*

[188] *Id.* at 4.

[189] *Id.* at 5.

[190] *Id.* at 5–6.

[191] *Id.* at 6.

[192] *Id.*

Defendant also argues that Plaintiff has not identified any discriminatory act suggesting that gender played a role in Plaintiff's pay.[193] Finally, Defendant argues that Blanchard's pay precludes Plaintiff's gender discrimination claim, because a female plaintiff cannot show wage discrimination based on sex when the second highest paid person performing the same job is a female.[194]

## H.   Defendant's September 16, 2016, Supplemental Memorandum in Support of the Motion

In its September 16, 2016, supplemental memorandum in support of the motion for summary judgment, Defendant alerts the Court that the portion of the Eastern District of Louisiana decision relied upon by Plaintiff in arguing the timeliness of her claims has been reversed.[195] In granting in part Defendant's motion to reconsider, Defendant asserts, the magistrate judge modified the original order to find that tolling of plaintiff Leal's claims extended from the filing of Odle's EEOC charge in October 1999, but not to the three hundred days before that filing.[196] Defendant states, however, that the magistrate judge did not modify the original finding that Leal could piggyback on Odle's EEOC charge.[197] Defendant argues that because Plaintiff did not complain of the same discriminatory treatment as Odle and Leal, the Court should not allow Plaintiff to piggyback on Odle's EEOC charge.[198] Defendant maintains that Plaintiff's claims

---

[193] *Id.* at 7.

[194] *Id.* (citing *Earle v. Aramark Corp.*, 247 Fed. App'x 519, 523 (5th Cir. 2007)).

[195] Rec. Doc. 99 at 1, 2 (citing *Leal v. Wal-Mart Stores, Inc.*, No. 15-5768, 2016 WL 6091179, at *1 (E.D. La. Aug. 15, 2016), *reconsideration denied in part sub nom. Leal v. Wal-Mart Stores, Inc.*, No. 15-5768, 2016 WL 6081957 (E.D. La. Oct. 18, 2016)).

[196] *Id.* at 4.

[197] *Id.*

[198] *Id.*

arising prior to August 23, 2000, are time-barred.[199] Finally, Defendant contends that no decision, including *Catlin*, has found that statute of limitations tolling for former *Dukes* class members extends to December 1998.[200] Instead, even if the Court applies the reasoning of *Catlin*, Defendant argues, Plaintiff's claims cannot be tolled beyond October 22, 1999.[201]

## I.    *Plaintiff's October 3, 2016, Supplemental Memorandum in Opposition to the Motion*

In her October 3, 2016, supplemental memorandum in opposition to the motion for summary judgment, Plaintiff argues that a plaintiff claiming discrimination under Title VII must first file a charge of discrimination with the EEOC or, under the single file rule, rely on the timely-filed charge of another similarly situated claimant.[202] Either way, Plaintiff argues, a filed charge of discrimination does two things by operation of law: (1) tolls the statute of limitations and (2) encompasses as timely all causes of action arising during the 300-day period preceding the filed charge of discrimination.[203] Plaintiff agrees with the magistrate judge's holding in *Leal* that the plaintiff could rely on Odle's timely-filed October 22, 1999, EEOC charge, but contends that the *Leal* court incorrectly declined to treat as timely the plaintiff's claims arising during the 300 days preceding October 22, 1999.[204] Plaintiff argues that the Court should reject the *Leal* court's reasoning and allow Plaintiff to bring claims arising 300 days preceding the filing of Odle's EEOC

---

[199] *Id.*

[200] *Id.* at 5.

[201] *Id.*

[202] Rec. Doc. 108 at 1.

[203] *Id.*

[204] *Id.* (citing *Leal v. Wal-Mart Stores, Inc.*, No. 15-5768, 2016 WL 6091179, at *1 (E.D. La. Aug. 15, 2016), *reconsideration denied in part sub nom. Leal v. Wal-Mart Stores, Inc.*, No. 15-5768, 2016 WL 6081957 (E.D. La. Oct. 18, 2016)).

charge, rather than those claims arising 300 days preceding the filing of the *Dukes* class action lawsuit.[205]

Plaintiff asserts that the *Leal* court's order held that while Odle's EEOC charge set the class period in *Dukes* to December 26, 1998, Odle's EEOC charge did not extend the limitations period to December 26, 1998.[206] According to Plaintiff, this means that the *Leal* plaintiff's claims were tolled only up to Odle's EEOC charge date of October 22, 1999, and that any claims arising before that date were time-barred.[207] Plaintiff contends that the *Leal* court's ruling is an error of law and should not be adopted by the Court.[208] Because the single file rule applies to claims arising from the same time frame, Plaintiff argues, the class period is not distinct from the tolling period; rather, the class period and tolling period are necessarily related because the class period is set by the applicable tolling time frame, as determined by the earliest filed charge of discrimination.[209]

Under the single file rule, Plaintiff argues, timeliness is determined by the earliest filed EEOC charge, not by the date that suit was first filed.[210] The *Leal* ruling, Plaintiff contends, is also at odds with the definition of the class in *Dukes*, which covers all employees working at Wal-Mart as early as December 26, 1998.[211] According to Plaintiff, if she could have filed a timely EEOC charge on the same date Odle filed her charge, then her claims are timely; if not, her claims are

---

[205] *Id.* at 1–2.

[206] *Id.* at 4.

[207] *Id.*

[208] *Id.*

[209] *Id.* at 5.

[210] *Id.* at 6 (citing *Rodgers v. Target Corp.*, No. 08-1300, 2012 WL 4482422, at *2–3 (W.D. La. Sept. 28, 2012); *Lumpkin v. Coca-Cola Bottling Co. United*, 216 F.R.D. 380, 384 (S.D. Miss. 2003); *Clayborne v. Omaha Pub. Power Dist.*, 211 F.R.D. 573, 588 (D. Neb. 2002)).

[211] *Id.* at 7.

time-barred.[212] Because her claims arising between December 26, 1998, and October 22, 1999, are within the 300-day statute of limitations for Title VII claims, Plaintiff argues, she could have filed a timely EEOC charge on October 22, 1999, and her claims are timely under the single file rule.[213] Finally, Plaintiff asserts that Defendant is estopped from arguing against the application of the single filing rule in this case, because Defendant has, according to Plaintiff, made and lost the same timeliness arguments on four previous occasions.[214]

### J.      Defendant's Sur-Reply and Supplemental Sur-Reply to Plaintiff's Opposition

In its October 12, 2016, sur-reply to Plaintiff's October 3, 2016, supplemental memorandum in opposition to the motion for summary judgment, Defendant argues that the *Leal* court's order is not manifestly erroneous and that Plaintiff has failed to identify any case that has directly held that the statute of limitations for the individual claims of former *Dukes* class members extends to December 26, 1998.[215] Defendant argues that the cases cited by Plaintiff in her supplemental memorandum stand for the proposition that a plaintiff's class claims must begin no earlier than the three hundred days before the earliest filing of an EEOC charge by a class representative.[216] According to Defendant, however, for individual claims after decertification of a class, exhaustion occurs from the date of tolling, *i.e.* the filing of the earliest class member's EEOC charge, to the period three hundred days later.[217] Defendant asserts that none of the cases cited by Plaintiff address the issue presented here, the timeliness of a former class member's

---

[212] *Id.* at 8.

[213] *Id.* at 9 (citing 42 U.S.C.A. § 2000e-5).

[214] *Id.* at 10–11.

[215] Rec. Doc. 117 at 2.

[216] *Id.* at 3.

[217] *Id.*

individual claims after class decertification.[218] Defendant also argues that it is not estopped from challenging the timeliness of Plaintiff's claims, because it did not previously litigate this specific issue in *Catlin* or *Dukes*.[219]

In its October 21, 2016, supplemental sur-reply to Plaintiff's supplemental memorandum in opposition to the motion for summary judgment, Defendant alerts the Court that the *Leal* court issued an order denying the *Leal* plaintiff's motion for reconsideration of its order that the plaintiff's claims did not toll beyond October 22, 1999.[220] According to Defendant, the *Leal* court did not find that Defendant was estopped from asserting the timeliness argument in this case, because that issue had not been litigated in any prior case.[221] Defendant also argues that Plaintiff, unlike the *Leal* plaintiff, cannot piggyback on Odle's EEOC charge, because her claims are not similar to Odle's claims of discrimination. According to Defendant, therefore, Plaintiff's claims arising before August 23, 2000, (300 days prior to the filing of the *Dukes* class action) are untimely.[222]

## K.    Plaintiff's Response to Defendant's Supplemental Sur-Reply

In her October 28, 2016, response to Defendant's supplemental sur-reply,[223] Plaintiff argues that under the single file rule, when a plaintiff relies on a named plaintiff's timely filed EEOC charge, the timely filed EEOC charge tolls the statute of limitations period for the non-

---

[218] *Id.*

[219] *Id.* at 4.

[220] Rec. Doc. 131 at 2.

[221] *Id.*

[222] *Id.*

[223] Rec. Doc. 172-1.

filing plaintiff's claims and that the Court must "look back" to determine which of the non-filing plaintiff's claims fall within the applicable limitations period based on the date of the tolling.[224]

Plaintiff further notes that the *Leal* court issued a decision denying reconsideration of its order holding that the *Leal* plaintiff's claims arising before the filing of Odle's EEOC charge were untimely.[225] In that decision by the *Leal* court, Plaintiffs argue, the magistrate judge determined that although a first-filed EEOC charge tolls the statute of limitations, the court should not look back to determine which claims fall within the applicable limitations period.[226] Plaintiff asserts that the *Leal* court held that only those claims arising on or after the date that Odle's EEOC charge was filed are timely and that the court found no contrary, binding authority in the Fifth Circuit.[227] Plaintiff argues, however, that a Fifth Circuit decision, *Pettway v. American Cast Iron Pipe Co.*,[228] supports Plaintiff's position on the tolling of her claims.[229]

Plaintiff asserts that *Pettway* involved a class action alleging discrimination claims under Title VII and concerned class members "both named and unnamed, who have filed or not filed complaints with the Equal Employment Opportunity Commission."[230] In determining the proper time frame for a back-pay award, Plaintiff argues, the Fifth Circuit affirmed that class members who had not filed an EEOC charge could rely on the timely charges filed by others.[231] Plaintiff

---

[224] *Id.* at 2.

[225] *Id.* (citing *Leal v. Wal-Mart Stores, Inc.*, No. 15-5768, Rec. Doc. 51 (E.D. La. October 18, 2016)).

[226] *Id.* (citing *Leal*, No. 15-5768, Rec. Doc. 51 at 4–5).

[227] *Id.* (citing *Leal*, No. 15-5768, Rec. Doc. 51 at 4–5).

[228] 494 F.2d 211 (5th Cir. 1974).

[229] Rec. Doc. 172-1 at 2.

[230] *Id.* at 2–3 (quoting *Pettway*, 494 F.2d at 244) (internal quotations omitted).

[231] *Id.* at 3 (citing *Pettway*, 494 F.2d at 256).

asserts that the Fifth Circuit held that the timely filed EEOC charges tooled the statute of limitations for all class members.[232] Next, Plaintiff argues, the Fifth Circuit looked back from the date that the limitations was tolled to determine which claims were timely based on the applicable limitations period.[233] Plaintiff asserts that the Fifth Circuit concluded that the back pay period was limited to the period within which the plaintiffs' claims could extend.[234] Thus, Plaintiff argues, there is binding Fifth Circuit precedent supporting Plaintiff's position that "a litigant's reliance on the single-file or piggy-back rule does not change how the statute of limitations is applied."[235]

Plaintiff next argues that the *Leal* court's decision was incorrect, because it disregarded the procedural history in the *Dukes* class action.[236] Plaintiff asserts that the *Leal* court relied on language from *Price v. Choctaw Glove & Safety Co., Inc.*,[237] to incorrectly hold that the single file rule applies only to a party who did not file an EEOC charge and is trying to opt-in to a suit filed by a similarly situated plaintiff.[238] Plaintiff asserts that under the *Leal* court's reasoning, the single file rule is inapplicable to the *Leal* plaintiff's case because she is not attempting to opt-in to a class.[239] Plaintiff argues that *Price* does not create such a limitation.[240] Plaintiff further argues that

---

[232] *Id.* at 3 (citing *Pettway*, 494 F.2d at 256).

[233] *Id.* at 3–4 (citing *Pettway*, 494 F.2d at 256).

[234] *Id.* at 4 (quoting *Pettway*, 494 F.2d at 256) ("Since no claim may extend to a period prior to July 2, 1965 under either Title VII or section 1981, this date marks the beginning of the back pay period.")

[235] *Id.* at 4.

[236] *Id.*

[237] 459 F.3d 595.

[238] *Id.* (citing *Leal v. Wal-Mart Stores, Inc.*, No. 15-5768, Rec. Doc. 51 (E.D. La. Oct. 18, 2016)).

[239] *Id.*

[240] *Id.* at 5.

the *Leal* plaintiff's case and her case "do not exist in a vacuum."[241] The district court in *Dukes*, Plaintiff argues, ruled that for putative class members like the *Leal* plaintiff and Plaintiff, Odle's EEOC charge: "(1) tolls the statute of limitations; (2) sets the applicable class period; and (3) sets the timeliness or applicable limitations period of putative class claims."[242] Plaintiff further argues that when the Supreme Court decertified the *Dukes* class, Wal-Mart agreed that the tolling already established in Dukes would be extended and carry forward so that all class members could "start the clock fresh" and those class members who had not filed EEOC charges would have 180 or 300 days to file an EEOC charge, depending on the relevant statute of limitations in the class member's state.[243] Plaintiff contends that the *Leal* court either ignores or discounts the procedural history in *Dukes*.[244]

### III. Law and Analysis

#### A.   *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[245] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[246] All reasonable inferences are drawn in favor of the nonmoving party,

---

[241] *Id.*

[242] *Id.* (citing Rec. Doc. 57-29 at 14–16).

[243] *Id.* at 6 (citing Rec. Doc. 57-31 at 4).

[244] *Id.*

[245] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[246] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[247] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[248] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[249]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[250] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[251] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[252] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[253] Rather, a factual dispute

---

[247] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[248] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[249] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[250] *Celotex*, 477 U.S. at 323.

[251] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[252] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[253] *Little*, 37 F.3d at 1075.

precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[254]

Defendant argues: (1) that Plaintiff failed to exhaust her administrative remedies and that her claims are time-barred and (2) that Plaintiff cannot establish a prima facie case of gender discrimination and that even if she could, Defendant has produced legitimate, non-discriminatory reasons for the sex segregation of job categories and Plaintiff's pay as compared to other employees. The Court will address Defendant's procedural argument first and then turn to the merits of Plaintiff's gender discrimination claim.

## B.     *Exhaustion of Administrative Remedies and Tolling of Statute of Limitations in Employment Related Class Actions*

### 1.     **Applicable Law**

The Fifth Circuit "has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII."[255] In order to file suit under Title VII, a plaintiff must first file a charge with the EEOC within 300 days of the alleged discriminatory act.[256] Once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action in federal court.[257] However, literal compliance with this rule is not always

---

[254] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[255] *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006).

[256] *Id.* (citing 42 U.S.C. § 2000e, et seq.).

[257] *Id.* (citing 42 U.S.C. § 2000e, et seq.).

required as "[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC."[258]

In *Oatis v. Crown Zellerbach Corp.*, the Fifth Circuit held "that it is not necessary for each member of a class to file an EEOC charge as a prerequisite to join a Title VII suit as long as at least one named plaintiff had filed such charges."[259] Therefore, under the "single filing rule," an individual can "opt-in to a suit filed by any similarly situated plaintiff under certain conditions."[260] In *Bettcher v. The Brown Schools, Inc.*, the Fifth Circuit further explained the "single filing rule," finding that three conditions must be satisfied before a plaintiff may invoke the rule:

> First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. Finally, a prerequisite . . . for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.[261]

Moreover, in *American Pipe & Construction Co. v. Utah*, the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[262] "Tolling, however, does not continue indefinitely. If the district court denies certification, or if it certifies the class but later decertifies it, tolling ceases."[263] "At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."[264]

---

[258] *Id.* (quoting *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968)).

[259] *Id.* (citing *Oatis*, 398 F.2d at 498).

[260] *Id.* at 599 (citing *Bettcher v. The Brown Schools, Inc.*, 262 F.3d 492, 494 (5th Cir. 2001)).

[261] *Id.* (citing *Bettcher*, 262 F.2d at 494–95).

[262] 414 U.S. 538, 554 (1974).

[263] *Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 320 (5th Cir. 2014).

[264] *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983).

### 2.      Analysis

Plaintiff was hired by Wal-Mart to work as a Meat Wrapper and Case Worker in December of 1997.[265] It is undisputed that Plaintiff was a member of the *Dukes* class action, which was filed in the United States District Court for the Northern District of California on June 19, 2001.[266] A district court judge in the Northern District of California certified the *Dukes* class under Rule 23(b)(2) of the Federal Rules of Civil Procedure for "all women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions, policies and practices."[267]

The Supreme Court decertified the *Dukes* class in 2011.[268] Following decertification, the district court extended the tolling established in the *Dukes* class action for all class members, so Plaintiff's statute of limitations was tolled for the duration of the class and extended to allow her to bring an EEOC charge.[269] The *Dukes* court gave former class members who had never filed an EEOC charge, like Plaintiff, until May 25, 2012, to file a charge with the EEOC.[270] It is undisputed that Plaintiff filed an EEOC charge against Defendant on May 18, 2012.[271]

In support of summary judgment, Defendant first argues that Plaintiff's claims are procedurally barred, because her May 18, 2012 EEOC charge was deficient and she has, therefore,

---

[265] *See* Rec. Doc. 57-3 at 5.

[266] *Dukes v. Wal-Mart Stores, Inc.*, No. 01-02252, 2001 WL 1902806, at *1 (N.D. Cal. June 19, 2001).

[267] *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 141–142 (N.D. Cal. 2014).

[268] 564 U.S. 338 (2011).

[269] Rec. Doc. 57-31 at 4.

[270] *Dukes v. Wal-Mart Stores, Inc.*, No. 01-02252 (N.D. Cal. August 19, 2011) (Rec. Doc. 760).

[271] Rec. Doc. 57-4.

not exhausted her administrative remedies as required under Title VII.[272] Second, Defendant

argues that Plaintiff's claims arising before August 23, 2000, are time barred.[273] Defendant argues

that Plaintiff's claims began tolling on August 23, 2000 (three hundred days before the *Dukes* class

action was filed).[274] In the alternative, Defendant argues that Plaintiff's claims began tolling no

earlier than October 22, 1999 (the date of filing of *Dukes* named plaintiff Stephanie Odle's EEOC

charge).[275] Plaintiff responds that her EEOC charge was legally sufficient and adequately put

Defendant on notice of her pay discrimination claims.[276] In response to Defendant's arguments

regarding the timeliness of her claims, Plaintiff argues that her claims arising since December 26,

1998, (three hundred days before the date of filing of Odle's EEOC charge) are timely, because

she was a member of the *Dukes* class action and she can rely on Odle's timely filed EEOC

charge.[277] Plaintiff does not contest that any pay discrimination claims arising before December

26, 1998, are untimely.

### a.   Defendant's Argument that Plaintiff has Failed to Exhaust her Administrative Remedies

Defendant first argues that Plaintiff's claims are procedurally barred, because her EEOC

charge was deficient and she has, therefore, not exhausted her administrative remedies as required

under Title VII.[278] Defendant asserts that Plaintiff's EEOC charge was legally deficient, because

---

[272] *See* 42 U.S.C.A. § 2000e-5(b).

[273] Rec. Doc. 54-1 at 13–14.

[274] *Id.*

[275] Rec. Doc. 72 at 6.

[276] Rec. Doc. 57 at 21.

[277] Rec. Doc. 74 at 2.

[278] *See* 42 U.S.C.A. § 2000e-5(b).

it did not identify a specific act of discrimination and did not put Defendant on notice of the alleged unlawful employment practice.[279] Plaintiff responds that her EEOC charge was legally sufficient and adequately put Defendant on notice of her pay discrimination claims.[280]

The Fifth Circuit has held that a Title VII plaintiff is not required to "recite a specific incantation" or to "allege a prima facie case before the EEOC" in order to exhaust her administrative remedies.[281] Instead, the "court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[282] In *Pacheco v. Mineta*, the Fifth Circuit held that the plaintiff had failed to exhaust his administrative remedies where his EEOC complaint solely alleged disparate treatment but his complaint alleged disparate impact.[283]

In Plaintiff's EEOC charge, Plaintiff identified the stores where she worked, her dates of employment, that she was an hourly employee, the type of discrimination alleged, and the context of the discriminatory conduct.[284] Additionally, Plaintiff responded to an EEOC questionnaire stating that she believed she was paid less than her male co-workers with "equal or less tenure and experience" between 1997 and 2011.[285] Plaintiff also stated that men were Meat Cutters and women were Meat Wrappers and that Meat Wrappers earned less per hour and lower merit raises,

---

[279] Rec. Doc. 54-1 at 13.

[280] Rec. Doc. 57 at 21.

[281] *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).

[282] *Id.* at 789 (internal quotations and citations omitted).

[283] *Id.*

[284] Rec. Doc. 57-4.

[285] Rec. Doc. 54-16.

44

even though they had more responsibility.[286] Finally, Plaintiff stated that between 1997 and 2011, her Managers led her to believe that she would not be promoted and that she was discriminated against in promotions because of her gender.[287] Although Defendant argues that the EEOC charge is deficient as a matter of law because it did not include sufficient detail regarding Plaintiff's employment in the Seafood Department, the EEOC charge states that Plaintiff experienced pay and promotion discrimination because of her gender "during her employment" at the Covington Wal-Mart from December 1997 until 2009, which encompasses her time in the Seafood Department.[288] It appears from the evidence in the record that a pay discrimination investigation could "reasonably have been expected to grow out of" Plaintiff's EEOC charge.[289] As a result, there is evidence to establish that Plaintiff exhausted her administrative remedies, and therefore Defendant has not demonstrated that no material facts are in dispute requiring a finding that Plaintiff's claims are procedurally barred as a matter of law.

> **b.** **Defendant's Arguments that Plaintiff's Claims arising before August 23, 2000, or Alternatively, before October 22, 1999, are Untimely**

Defendant argues that Plaintiff's claims arising before August 23, 2000, (three hundred days before the filing of the *Dukes* class action) are untimely, because Plaintiff should not be allowed to rely on *Dukes* named plaintiff Stephanie Odle's EEOC charge under the single file rule.[290] Defendant appears to argue that Defendant was not put on notice of Plaintiff's claims until the filing of the class action on June 19, 2001, and that Plaintiff's claims arising more than 300

---

[286] *Id.*

[287] *Id.*

[288] Rec. Doc. 57-4; *see also* Rec. Doc. 57-3 at 23.

[289] *Pacheco*, 448 F.3d at 789.

[290] Rec. Doc. 54-1 at 15.

days before that filing are time-barred as a result.[291] In the alternative, Defendant argues that Plaintiff's claims began tolling no earlier than October 22, 1999, (the filing of *Dukes* named plaintiff Stephanie Odle's EEOC charge).[292] In response, Plaintiff argues that her claims arising after December 26, 1998, are timely, because she can rely on Odle's timely filed EEOC charge under the single file rule and Odle's EEOC charge encompassed alleged discriminatory actions that occurred after December 26, 1998.[293]

As discussed above, in the Fifth Circuit three conditions must be satisfied before a plaintiff may invoke the single filing rule: (1) the plaintiff must be similarly situated to the person who actually filed the EEOC charge; (2) the charge must have provided some notice of the collective or class-wide nature of the charge; and (3) the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.[294]

Regarding the first requirement, Odle's EEOC charge alleged that she was denied the opportunity to be promoted as Manager in 1999 and experienced discriminatory behavior throughout her employment with Wal-Mart from 1991 to 1999.[295] Plaintiff's EEOC charge stated that she was "discriminated against in pay and promotions because of [her] gender" since her employment with Wal-Mart began in 1997.[296] Plaintiff has pointed to evidence that Plaintiff's EEOC charge encompasses the time when Odle's claims arose, and Plaintiff's claim arises out of

---

[291] Rec. Doc. 99 at 2–3.

[292] Rec. Doc. 72 at 6.

[293] Rec. Doc. 74 at 3.

[294] *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 599 (5th Cir. 2006) (citing *Bettcher v. The Brown Schools, Inc.*, 262 F.3d 492, 494 (5th Cir. 2001)).

[295] *See Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 317 (5th Cir. 2014).

[296] Rec. Doc. 57-4.

similar discriminatory treatment.[297] Although Plaintiff does not contend that she was denied the opportunity to be promoted as Manager, she does contend that sex segregation of jobs prevented her from obtaining higher paying positions. Thus, the Court finds that Plaintiff has pointed to sufficient evidence to support her assertion that she is similarly situated to Stephanie Odle. As for the second requirement, Odle's EEOC charge alleged that she had "evidence of discriminatory treatment of females that likewise indicate a pattern or practice of discrimination toward females in management positions."[298] Thus, the Court finds that Odle's EEOC charge provided "some notice of the collective or class-wide nature of the charge," later filed by Plaintiff here.[299] Regarding the final requirement, Stephanie Odle, the individual who filed the EEOC charge, was a named plaintiff in the *Dukes* class action, and Plaintiff joined in that suit.[300] Accordingly, the Court finds that Plaintiff has pointed to sufficient evidence to support her assertion that she may rely on Odle's timely filed EEOC charge under the single file rule as articulated by the Fifth Circuit.

Plaintiff has pointed to evidence that Plaintiff's claims arising since December 26, 1998, are timely, because under the single filing rule, Plaintiff may rely on Odle's timely filed EEOC charge. Odle's EEOC charge covered allegedly discriminatory conduct occurring 300 days before the filing of the charge, as early as December 26, 1998. The Court does not see a compelling reason, and Defendant has not offered one, to bar Plaintiff's claims that arise out of the same time period covered by Odle's EEOC charge. Because Plaintiff has pointed to sufficient evidence that

---

[297] *See Price*, 459 F.3d at 599.

[298] Rec. Doc. 33-3 at 3.

[299] *Price*, 459 F.3d at 599.

[300] *Id.*

her claims arising since December 26, 1998, relate to Odle's October 22, 1999, EEOC charge of discrimination, Defendant has not established that no material facts are in dispute and that it is entitled to judgment as a matter of law that Plaintiff's claims are untimely.

Defendant cites *Price v. Choctaw Glove & Safety Co., Inc.*, to support its assertion that Plaintiff's claims were only tolled 300 days before the filing of the class action not 300 days before the filing of Stephanie Odle's EEOC charge.[301] In *Price*, the Fifth Circuit held that "[a] non-charging party cannot bring her own independent lawsuit based upon another party's [EEOC] charge" where the non-charging party did not opt-in to a class-action lawsuit filed by the charging party.[302] In *Price*, the plaintiff chose to not opt-in to a prior class action and filed a separate lawsuit. However, here it is undisputed that Plaintiff was a member of the prior *Dukes* class action. Therefore, her claims were tolled under the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*.[303]

Defendant relies on a recent decision by a magistrate judge in the Eastern District of Louisiana, *Leal v. Wal-Mart Stores, Inc.*, in which the court, while reversing itself without a detailed explanation,[304] held that a plaintiff who was a former member of the *Dukes* class could rely on Odle's EEOC charge but could only bring claims for the period on or after Odle's October 22, 1999, EEOC charge.[305] The *Leal* court's decision to limit the plaintiff's claims to the period

---

[301] Rec. Doc. 99 at 3 (citing *Price*, 459 F.3d at 598).

[302] *Price*, 459 F.3d at 599.

[303] 414 U.S. 538, 554 (1974).

[304] The magistrate judge held: "It appears that Odle's charge was filed on October 22, 1999, and the December 26, 1998, date was actually the class period which was determined by the presiding trial judge in the *Dukes* Matter. Therefore, the Court finds that Leal's claim was tolled up to October 22, 1999. As such, the claims for the period before October 22, 1999, are time barred." *Leal*, No. 15-5768, Rec. Doc. 41 at 4.

[305] *See Leal*, No. 15-5768, Rec. Doc. 41 at 4.

48

after October 1999, differed from that same court's earlier determination that the plaintiff's claims arising during the time period on or after December 26, 1998, were timely.[306]

The Court disagrees with the *Leal* court's conclusion that a plaintiff, relying on another plaintiff's timely filed EEOC charge under the single file rule, may not bring claims that arise within the time period covered by that EEOC charge.  Plaintiff has pointed to evidence supporting her position that she may rely on Odle's timely filed EEOC charge under the single file rule, because she is similarly situated to Odle, the person who actually filed the EEOC charge; Odle's EEOC charge provided notice of the collective or class-wide nature of the charge; and Plaintiff joined the suit filed by Odle.[307] If Plaintiff, rather than Odle, had filed an EEOC charge on October 22, 1999, she would have been permitted to bring claims arising out of conduct that occurred since December 26, 1998. Accordingly, because Plaintiff has pointed to evidence that Plaintiff may rely on Odle's timely filed EEOC charge, the Court finds that she may also bring claims arising within the time period covered by Odle's EEOC charge.[308] This Court's determination that Plaintiff may rely on Odle's EEOC charge, rather than finding that she should have filed her own EEOC charge at the same time as Odle, is consistent with the Fifth Circuit's determination that "[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance to have to process many identical complaints with the EEOC."[309]

---

[306] *Id.* at 1.

[307] *See Price*, 459 F.3d at 599.

[308] *Cf. Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211,256 (5th Cir. 1974) (holding that non-charging Title VII plaintiffs may rely on timely filed EEOC charge of named class member and that back pay award should be determined by the time period covered by the statute of limitations).

[309] *Price*, 459 F.3d at 598.

Defendant's reliance on the Northern District of Alabama's decision in *Cooks v. Wal-Mart Stores, Inc.* is also misplaced.[310] In that case, the plaintiff, who had left her employment with Wal-Mart in 2000, attempted to bring an individual discrimination claim following the decertification of the *Dukes* class.[311] The court found that the plaintiff's discrimination claims were not similar to *Dukes* named plaintiff Odle's discrimination claims.[312] As a result, the court held that the plaintiff could not rely on Odle's timely filed EEOC charge and could not benefit from tolling due to the pendency of the *Dukes* class action.[313] The *Cooks* court relied on a Northern District of Texas decision that has since been reversed by the Fifth Circuit to further hold that even if the plaintiff were allowed to rely on Odle's EEOC charge, her claims would have been untimely.[314] This case is distinguishable from *Cooks*. Here, unlike the plaintiff in *Cooks*, the Plaintiff here was an employee at Wal-Mart at the time of the *Dukes* filing. Moreover, Plaintiff has pointed to evidence supporting her assertion that her claims arise out of similar discriminatory treatment within the same time period of Odle's EEOC charge. Because Plaintiff, unlike the *Cooks* plaintiff, may rely on Odle's timely filed EEOC charge, Defendant has not shown that there are no material facts in dispute and that Plaintiff cannot rely on the single file rule as a matter of law.

Plaintiff relies on the reasoning in *Catlin v. Wal-Mart Stores, Inc.*, where a district judge in the District of Minnesota rejected the defendant's argument that the plaintiff's claims were time-

---

[310] No. 13-526, 2013 WL 5350661 (N.D. Ala. Sept. 23, 2013).

[311] *Id.* at *3.

[312] *Id.*

[313] *Id.* at *4.

[314] *Id.* (citing *Odle v. Wal-Mart Stores Inc.*, No. 3:11-CV-2954-O, 2012 WL 5292957, at *1 (N.D. Tex. Oct. 15, 2012), *rev'd and remanded*, 747 F.3d 315 (5th Cir. 2014)).

barred because they had expired before the *Dukes* class action commenced.[315] The district court reasoned that the single file rule applied and that a single class representative's timely filed EEOC charge "tolls the statute of limitations for all putative class members to file charges."[316] This Court's determinations are consistent with the *Catlin* court's finding that *Dukes* class members may rely on Odle's EEOC charge under the single file rule.[317]

To summarize, Plaintiff has pointed to evidence that she fits squarely within the class certified by the district court in *Dukes*. Under the single file rule, Plaintiff may rely on Odle's timely filed EEOC charge, because Plaintiff has pointed to evidence to support her assertion that her claims arise out of similar discriminatory treatment in the same time frame.[318] Because Plaintiff may rely on Odle's timely filed EEOC charge, the Court finds that she may also bring claims arising within the time period covered by Odle's EEOC charge. After decertification of the *Dukes* class, tolling extended to all class members, and Plaintiff had until May 25, 2012, to file an EEOC charge. It is undisputed that Plaintiff timely filed an EEOC charge on May 18, 2012. Having determined that Plaintiff's claims arising since December 26, 1998, are not procedurally barred or time-barred as matter of law, the Court will turn to the parties' arguments regarding Plaintiff's prima facie case of gender discrimination.

## C.   *Prima Facie Case of Gender Discrimination*

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue

---

[315] 123 F.Supp. 1123, 1130 (D. Minn. 2015).

[316] *Id.* (citing *Clayborne v. Omaha Pub. Power Dist.,* 211 F.R.D. 573, 588–89 (D. Neb. 2002).

[317] *Id.*

[318] *See Price*, 459 F.3d at 598.

of material fact.[319] Here, Defendant asserts that Plaintiff cannot establish a prima facie case of gender discrimination, because it is undisputed that Meat Cutter and Meat Wrapper jobs were substantially different and Plaintiff was not paid less than any similarly situated male who performed the same job.[320] In response, Plaintiff asserts that pay data undisputedly illustrates that every employee within the Meat Department was categorized in the same position, as "processor," which was later classified as "Sales Associate."[321] Thus, Plaintiff argues, she and her male coworkers were similarly situated "from the perspective of the employer."[322] Plaintiff also argues that the total sex segregation of Meat Cutters and Meat Wrappers raises a strong inference that Defendant was discriminatory where no special qualifications were needed to become apprenticed as a Meat Cutter.[323] Plaintiff further argues that in each of her three positions she was paid less than male employees performing the same job responsibilities.[324]

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . ."[325] A claim of employment discrimination can be proven through direct or circumstantial evidence.[326] Direct evidence is evidence that proves

---

[319] *Celotex,* 477 U.S. at 323.

[320] Rec. Doc.54-1 at 9.

[321] Rec. Doc. 57 at 16.

[322] *Id.* (quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002)).

[323] *Id.* (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 869 (7th Cir. 1985)).

[324] *Id.* at 18.

[325] 42 U.S.C. § 2000e–2(a)(1).

[326] *Russell v. McKinney Hospital Venture,* 235 F.3d 219, 222 (5th Cir. 2000).

the fact of discriminatory animus without inference or presumption.[327] To survive summary judgment in an employment discrimination case in the absence of direct evidence of discrimination, the plaintiff must demonstrate, pursuant to the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, that: (1) she was in a protected class; (2) she was qualified for the position; (3) she suffered adverse employment action; and (4) she was treated less favorably than similarly situated employees.[328] The Supreme Court noted that courts should apply this framework flexibly, as "the facts necessarily will vary in Title VII cases."[329] Moreover, "to establish a prima facie case, a plaintiff need only make a very minimal showing."[330]

If the plaintiff can establish these elements, the burden will shift to the defendant to show a legitimate, non-discriminatory purpose for the adverse employment action.[331] The defendant must point to admissible evidence in the record,[332] but the burden is one of production, not persuasion.[333] The defendant is not required to show that the employment decision was proper,

---

[327] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[328] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (applying the *McDonnell Douglas* framework to Title VII claims).

[329] *Id.* at 802 n.13; *see also Intern. Broth. of Teamsters*, 431 U.S. at 358 (recognizing that the importance of *McDonnell Douglas* lies "not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decisions was based on a discrimination criterion illegal under the [Civil Rights] Act"); *Barnes*, 778 F.2d at 1099 ("The *McDonnell Douglas* rule was intended to be a flexible one.").

[330] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[331] *Id.*

[332] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[333] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

only that it was not discriminatory.[334] The employer may succeed at this stage by proving that it would have taken the same action even had it not considered the unlawful factor.[335]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[336]

Here, Plaintiff has asserted two theories of pay discrimination. The first is that she received unequal pay and was precluded from higher earning positions as a result of discriminatorily motivated sex segregated job classifications within the Meat Department.[337] The second is that she experienced pay discrimination due to male comparators within her same positions—Meat Wrapper/Case Worker, Department Manager/Lead Associate, and Sales Associate—earning higher pay despite performing the same job responsibilities.[338] The Court will address each theory in turn to determine whether Plaintiff has met her burden under *McDonnell Douglas*.

1.     **Sex Segregation of Job Classifications**

Regarding Plaintiff's first theory, Plaintiff first asserts she is a member of a protected class, because she is a woman. Plaintiff next asserts that she was qualified for the Meat Cutter position,

---

[334] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007); s*ee also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[335] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

[336] *Id.*

[337] Rec. Doc. 57 at 13.

[338] *Id.*

54

as Hebert testified that no prior cutting experience was required for the position.[339] Plaintiff next points to pay data in the record that demonstrates that Meat Cutters and Lead Associates were paid more than Meat Wrappers and Case Workers, thereby supporting her contention that she suffered an adverse employment action by receiving lower pay as the result of sex segregation.[340] Defendant argues that under her sex segregation theory, Plaintiff cannot meet the fourth requirement that she was treated less favorably than similarly situated employees, because it is undisputed that the Meat Cutter and Meat Wrapper jobs were different.[341]

The Fifth Circuit has instructed that in determining whether a plaintiff was treated differently from an alleged comparator, the issue is whether the plaintiff and the alleged comparator are similarly situated from the perspective of their employer at the time of the relevant decisions.[342] Here, Plaintiff notes that Defendant was unable to produce a single job description for the different categories of workers, and points to Defendant's pay data, which undisputedly illustrates that every employee within the Meat Department was categorized in the same position, as a "processor," which was later reclassified to "Sales Associate."[343] Therefore, Plaintiff contends, she and her male coworkers were similarly situated "from the perspective of the employer."[344] The pay data show that male processors were paid substantially more than female processors.[345] Plaintiff has, thus, made the "minimal showing" required to establish a prima facie

---

[339] Rec. Doc. 57-3 at 23.

[340] *Id.* at 14.

[341] Rec. Doc. 54-1 at 9.

[342] *Perez*, 395 F.3d at 210.

[343] *Id.*

[344] *Id.* (quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002)).

[345] *Id.*

case of discrimination under her first theory of discrimination that she was segregated into lower paying positions within the Meat Department because of her gender.[346]

Defendant proffers four legitimate, non-discriminatory reasons in response to Plaintiff's prima facie case of gender discrimination under a sex segregation theory. First, Defendant contends that the Meat Cutter position was open to females, as Plaintiff acknowledges that there was one female Meat Cutter in Covington for a short time.[347] Second, Defendant argues that Meat Cutters received higher pay than Meat Wrappers, because Meat Cutters were more skilled than Meat Wrappers.[348] Third, Defendant asserts that no women applied for a Meat Cutter position during Plaintiff's employment, but there was no rule or policy preventing them from doing so.[349] Fourth, Defendant argues that Plaintiff admitted that she did not apply for the position because she was afraid of working with saws.[350] Defendant has, thus, met its burden of production under the *McDonnell Douglas* framework.

Because Defendant has met its burden of production, Plaintiff must show that any of the non-discriminatory reasons offered by Defendant are a pretext for discrimination. Plaintiff has pointed to evidence in the record to suggest that Defendant's proffered reasons for the sex segregation within the Meat Department are pretextual. First, in response to Defendant's assertion that the Meat Cutter position was open to women, Plaintiff notes that the only female Meat Cutter to work at Covington was a temporary worker and that Hebert never hired a female Meat Cutter

---

[346] *Nichols*, 81 F.3d at 41.

[347] *Id.*

[348] Rec. Doc. 54-1 at 11.

[349] *Id.*

[350] *Id.*

or Lead Associate.[351] Second, in response to Defendant's assertion that Meat Cutters were more skilled than Meat Wrappers, Plaintiff notes that Hebert testified that prior skills training was not required to obtain a Meat Cutter position and that he had previously placed employees into a meat cutting apprenticeship program who had no prior meat-cutting experience.[352] Third, in response to Defendant's assertion that no women applied for the Meat Cutter position during Plaintiff's employment, Plaintiff points to Hebert's testimony that he did not post job openings for Meat Cutters, and instead, self-selected replacements, who were all male, without mentioning or advertising the openings to all employees.[353] Plaintiff further points to Hebert's use of gender stereotyping language about female Case Workers' "stature" and physical abilities during his testimony to suggest that gender stereotyping may have improperly influenced Hebert's selection of employees to fill the Meat Cutter position.[354]

Fourth, in response to Defendant's argument that Plaintiff was afraid of saws, Plaintiff asserts that she was unaware of in-store training available for her to learn the necessary skills to cut meat.[355] Plaintiff further argues that although the Meat Cutter apprenticeship program was developed by Hebert during Plaintiff's time at Wal-Mart, he never suggested that Plaintiff participate.[356] Although Hebert testified that he never encouraged Plaintiff to cut meat because

---

[351] Rec. Doc. 57-3 at 6.

[352] *Id.* at 23.

[353] *Id.* at 11; *see Int'l Broth.*, 431 U.S. at 365 (noting that an unofficial policy of discrimination discouraging members of a protected class to apply for a position could be communicated by ". . . the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups").

[354] *Id.* at 7.

[355] Rec. Doc. 57 at 20.

[356] Rec. Doc. 57-3 at 23.

"she never asked," Plaintiff notes that he, nevertheless, encouraged her to work in the Seafood and Deli departments without Plaintiff requesting to do so.[357] Plaintiff's testimony that she was afraid of saws does not preclude her gender discrimination claim, because even if she was afraid of saws, it does not necessarily follow that Defendant was not improperly motivated by gender discrimination in segregating job categories within the Meat Department. Plaintiff's testimony that she was afraid of working with saws may indeed influence a finder of fact's determination of the damages owed to Plaintiff should she be able to prove liability, but her testimony does not preclude a gender discrimination claim.[358] Plaintiff has pointed to sufficient specific evidence in the record to show that Defendant's proffered reasons for the sex segregation of the Meat Department are a pretext for employment actions impermissibly based on gender stereotyping.[359]

### 2.      Higher Pay to Male Comparators in Similar Positions

Under Plaintiff's second theory of gender discrimination, she argues that she experienced pay discrimination due to male comparators within her same positions—Meat Wrapper/Case Worker, Department Manager/Lead Associate, and Sales Associate—earning higher pay despite performing the same job responsibilities.[360] Plaintiff points to evidence in the record that two male Case Workers were paid more than her in the Meat Department and that a similarly situated male in the Seafood Department was also paid more than her.[361] Rather than offer legitimate, non-discriminatory reasons for the alleged pay discrimination, Defendant argues that Plaintiff cannot

---

[357] Rec. Doc. 57 at 20.

[358] *See, e.g., Ford Motor Co. v. EEOC*, 458 U.S. 219, 241 (1982) (holding that Title VII plaintiff's rejection of employer's unconditional job offer ends accrual of potential backpay liability).

[359] *See Price Waterhouse*, 490 U.S. at 250 (recognizing relevance of sex stereotyping to Title VII actions).

[360] Rec. Doc. 57 at 13.

[361] Rec. Doc. 57 at 19–20.

establish a prima facie case using comparator evidence, because it is "essentially impossible" to accurately determine from Defendant's employment histories what jobs employees held and when.[362] Additionally, Defendant contends that because Blanchard, a female Case Worker, was paid more than some of the male Meat Cutters, Plaintiff's gender discrimination claim fails.[363] Defendant also argues that Plaintiff testified that she did not experience discrimination during her time in the Seafood Department.[364]

   Plaintiff has pointed to sufficient evidence in the record to identify male comparators who performed similar duties and were paid more than she was during the same time period. Defendant's assertion that its employment histories are inaccurate does not defeat Plaintiff's discrimination claim. Rather, it suggests the existence of a genuine dispute for the trier of fact.[365] Defendant's argument regarding Blanchard likewise involves a factual dispute, because Defendant has noted that its employment history records are unreliable.[366] It is, thus, unclear at this point what position Blanchard held and whether she performed similar duties as Plaintiff. More importantly, even if a female Case Worker was paid more than some of the male Meat Cutters, it does not follow that Plaintiff cannot establish a prima facie case of gender discrimination. The Supreme Court has recognized that the primary purpose of Title VII is the protection of the individual employee, not the protection of the minority group as a whole.[367]

---

   [362] Rec. Doc. 67 at 4–5.

   [363] *Id.* at 5.

   [364] *Id.* at 6.

   [365] *See Perez*, 395 F.3d 206 (5th Cir. 2004) (holding that whether employees to whom plaintiff sought to compare himself were similarly situated to plaintiff was issue for jury).

   [366] Rec. Doc. 64-1 at 4–5.

   [367] *Conn. v. Teal*, 457 U.S. 440, 453–54 (1982) (recognizing that Title VII would have little force if an employer could defeat a claim of discrimination by treating a single member of the protected class in accordance with the law); *see also City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 708–09 (1978)

Defendant cites *Earle v. Aramark Corp.* to support its argument that Plaintiff's gender discrimination claim is precluded.[368] In *Earle*, a 44-year-old plaintiff sued her former employer for age and sex discrimination.[369] The district court granted summary judgment in favor of the employer, because the plaintiff failed to allege any discriminatory intent by her former employer, and the evidence failed to demonstrate any evidence of disparate treatment based on sex.[370] Although the district court noted that the plaintiff was paid more than another male in the same position and that the second-highest paid employee in the plaintiff's position was female, the Fifth Circuit did not uphold the district court's grant of summary judgment because there was one female receiving higher pay than males in the same position. Rather, the Fifth Circuit agreed with the district court's analysis that the plaintiff had failed to provide sufficient evidence to establish a prima facie case of pay discrimination or to show that the defendant's proffered legitimate, non-discriminatory reasons were a pretext for discrimination.[371] Here, unlike the plaintiff in *Earle*, Plaintiff has pointed to pay data and anecdotal evidence in the record to suggest that she was paid less than similarly situated male employees and that impermissible discrimination based on sex may have motivated Defendant's employment actions.

Finally, Defendant's argument that Plaintiff admitted that she did not experience discrimination in the Seafood Department is unavailing. Plaintiff testified that she was not aware

---

(recognizing that fairness to a class of women employees does not excuse discrimination against an individual female employee); *Hodgson v. American Bank of Commerce*, 447 F.2d 416, 421 (1971) (holding that the fact that two female employees were making $5.00 a month more than male tellers did not establish that there was no prohibited sex discrimination between wages of men as a group and women as a group).

[368] 247 Fed. App'x 519 (5th Cir. 2007).

[369] *Id.* at 521.

[370] *Id.* at 523.

[371] *Id.* at 523–524.

of pay discrepancies while she was employed in the Seafood Department, but she also said that she felt like she deserved more compensation.[372] Given that Plaintiff did not have pay data available to her, the fact that she did not know whether she had experienced pay discrimination is not surprising. Her statement that she felt like she was treated fairly in the Seafood Department but that she also felt that she deserved more compensation does not suggest the absence of a genuine issue of material fact. Rather, Plaintiff's statement suggests that she did not have the information at the time of her testimony to definitively state that she experienced pay discrimination in the Seafood Department. At this point, however, Plaintiff has utilized evidence of pay data to establish a prima facie case of pay discrimination in the Seafood Department by pointing to a similarly situated male who was paid more than her during the same time period.[373]

Viewing the evidence in the light most favorable to the nonmovant, the Court finds that Plaintiff has succeeded in identifying specific evidence in the record and articulating how that evidence supports her claims of gender discrimination.[374] Because genuine issues of fact exist, Defendant is not entitled to summary judgment on Plaintiff's gender discrimination claim.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Summary Judgment"[375] is **GRANTED IN PART AND DENIED IN PART.**

---

[372] Rec. Doc. 57-3 at 31–32.

[373] Rec. Doc. 57 at 20.

[374] *See Forsyth*, 19 F.3d at 1537.

[375] Rec. Doc. 54.

**IT IS FURTHER ORDERED** considering that Plaintiff has not contested Defendant's arguments, Defendant's motion is **GRANTED** to the extent that Plaintiff's claims occurring before December 26, 1998, are time-barred.

**IT IS FURTHER ORDERED** that Defendant's motion is **DENIED** because the Court finds that Plaintiff has pointed to sufficient evidence supporting Plaintiff's assertion that her claims arising since December 26, 1998, are not procedurally barred or time-barred.[376]

**IT IS FURTHER ORDERED** that Defendant's motion is **DENIED** because material issues of fact are in dispute regarding whether Plaintiff has asserted a valid claim for discrimination.

**NEW ORLEANS, LOUISIANA**, this __31st__ day of October, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[376] Plaintiff also contends that Defendant is judicially estopped from asserting that the Plaintiff's claims are time barred. However, Plaintiff points to no cases adverse to Defendant directly addressing this issue of tolling after the decertification of the *Dukes* class action. Accordingly, the Court has not addressed this argument.